## THE STATE v. MCCONKEY.

1. **Criminal Law : FALSE PRETENSES.** It is not necessary that an indictment for obtaining property by false pretenses should state, in terms, that credit was given to the representations alleged to have been falsely made, when it contained the allegation that by the representations so made the defendant obtained the property.

2. ———: ———. Upon the trial of one indicted for falsely representing himself to be the owner of real estate, which he thus disposed of, it was *held* that the action of the court in refusing to instruct the jury that the purchaser was bound to "exercise ordinary prudence and diligence to inform himself of the truth or falsity of the representations made" was correct.

3. ———: **VERDICT.** A verdict cannot be impeached upon an affidavit of jurors that they would not have assented thereto but for a refusal of the judge to give further instructions respecting certain evidence about which they made inquiry.

4. ———: **FALSE PRETENSES.** An indictment will lie for pointing out to a purchaser valuable property as that sold him, and, in fact, conveying other property which is worthless; and, in such case, the indictment need not allege want of ownership in the seller of the property so pointed out.

*Appeal from Polk District Court.*

FRIDAY, OCTOBER 25.

THE defendant was indicted for obtaining property by false pretense. The first count of the indictment is as follows: "The said Samuel McConkey, on the 4th day of November,

A. D. 1876, in the county of Polk aforesaid, unlawfully, felo-niously, designedly, falsely, by false token and false pretense, and with intent to defraud, did then and there falsely pre-tend and represent to one Albert Hurst that he, the said Sam-uel McConkey, was then and there the owner of a certain city lot, to-wit:   Lot one, in block two, in Van's addition to the city of Des Moines, Iowa; and did then and there falsely pre-tend and represent to said Albert Hurst that a certain lot which he, the said Samuel McConkey, then and there pointed out, showed and designated to him, the said Albert Hurst, was lot one, in block two, in Van's addition to the city of Des Moines, Iowa, aforesaid; and he, the said Samuel McConkey, then and there sold and traded said lot and house to be built thereon by him, the said Samuel McConkey, to him, the said Albert Hurst, for and in consideration of two horses of the value of fifty dollars each, one wagon of the value of sixty dol-lars, and one set of double harness of the value of twenty dol-lars; and the said lot then and there so pointed out, shown and designated to him, the said Albert Hurst, by the said Samuel McConkey, was the lot he, the said Albert Hurst, then and there bargained and traded for, whereas, in truth and in fact, there was no such lot as lot one, in block two, in Van's addition to the city of Des Moines, Iowa; and in truth and in fact the lot then and there so pointed out, shown and desig-nated to him, the said Albert Hurst, by him, the said Samuel McConkey, was not the said lot one, in block two, in Van's addition to the city of Des Moines, Iowa, but another and dif-ferent lot, all of which he, the said Samuel McConkey, then and there well knew, by color and by means of which said false token and false pretense he, the said Samuel McConkey, did then and there unlawfully, feloniously, knowingly, designedly, falsely, by false token and by false pretense, and with intent to defraud, obtain from him, the said Albert Hurst, the horses, wagon and harness aforesaid; and he, the said Samuel McCon-key, did then and there make said false token and false pre-tense and representation to him, the said Albert Hurst, to

induce him, the said Albert Hurst, then and there to part with the aforesaid wagon, horses and harness, in exchange for the lot and house to be built thereon as aforesaid, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Iowa."

The second count is the same in substance, except that it sets out the written contract entered into between defendant and Hurst, and alleges that Hurst was induced to enter into said writing by the false token and false pretense as above alleged.

The defendant demurred to the indictment, in substance, as follows:

1. That neither count of the indictment contains any averment that Hurst believed or relied upon the representations charged to have been made.

2. That the location of said lot is a matter of record, and by the use of ordinary diligence Hurst could have guarded and protected himself against any loss or damage by reason of the alleged fraudulent representation.

3. That each of the counts charges a separate and distinct offense.

4. That the second count does not charge that the defendant obtained the signature of Hurst to the instrument described therein, the false making of which would be punishable as forgery.

5. The indictment does not specify or designate the lot alleged to have been pointed out to Hurst by the defendant.

The court overruled the demurrer, to which the defendant excepted. The defendant was tried and convicted. His motions in arrest of judgment, and to set aside the verdict and grant a new trial, were overruled, and he was sentenced to the penitentiary for nine months. The defendant appeals.

*Holmes & Nottingham*, for appellant.

*J. F. McJunkin, Attorney General*, for the State.

The State v. McConkey.

DAY, J.—I. It is claimed that the indictment is insufficient, because it does not aver that Hurst believed or relied

1. CRIMINAL
law : false
pretenses.

upon the representations alleged to have been made by the defendant. In charging the offense the indictment follows substantially the language of the statute defining the crime. See Code, § 4073. The indictment charges that by means of the false token and pretense the defendant obtained from Hurst the property described. This allegation embraces the idea that Hurst relied upon the representations made; for, if he had not done so, the defendant could not, by means of such representations, have induced him to part with his property. See *State v. Pinley*, 27 Conn., 587.

II. It is urged that the court should have sustained the fifth ground of the demurrer, and the fifth cause assigned in the motion in arrest of judgment, which are the same, and are as follows: "That the said indictment does not, in either count thereof, specify or designate the lot alleged to have been pointed out to the said Hurst by said defendant." In argument it is said that "the indictment only alleges the property to be in the city of Des Moines, and that it was lot one, block two, of Van's addition;" citing 2 Wharton's Criminal Law, § 2157. Appellant's counsel have not undertaken to indicate how it would be practicable to give a more specific description of a town lot than the city, addition, block and lot.

III. It is insisted that the court should have sustained the motion in arrest of judgment upon the ground that the verdict is not sustained by the evidence. It is claimed in argument that there is absolutely no evidence to show that defendant was in any manner familiar with the correct names, numbers, or additions of property in the city of Des Moines, or that he knew the property he showed and traded to Hurst was not called lot one, block two, Van's addition. This claim is in utter disregard of the testimony. The evidence shows clearly that defendant admitted that he pointed out to Hurst, as the lot sold to him, the west half of Tom McConkey's and

David Jones' lots, and that a short time after the trade he boasted that he had traded Hurst a lot, and made a good thing of it; that the lot was out in the middle of Coon river, and he was to build a house 12 by 14 on it, and could not do it until it was raised or "spiled;" that a man could not fill up the lot, and if he undertook to stand in the water he would get his feet wet and take cold. The evidence establishes the perpetration of a most deliberate and wicked fraud, and exhibits in a manner seldom equaled a disregard for the rights of others and a dishonest attempt to overreach. The conduct of the defendant, as portrayed by the evidence, is deserving of the severest animadversion.

IV. Appellant complains of the refusal of the court to give the following and like instructions, to-wit: "Before 2. ──: ──. you can find the defendant guilty you must find that Hurst exercised ordinary prudence and diligence to inform himself of the truth or falsity of representations made by defendant as to character, location, number or description of the lot or land for which he was trading with the defendant." We think the instructions were properly refused. The defendant took Hurst to a locality in the city of Des Moines, stepped and marked off by stakes at the corners a lot, represented that he owned it, proposed to sell it to Hurst, and told him that it was lot one, block two, of Van's addition. There was nothing unreasonable or improbable in this representation. It was made for the purpose of being believed by Hurst, and defendant has no right to complain that Hurst took him at his word and relied upon the statement made. If the representation had been absurd or improbable, or Hurst had had the means of detection at hand, a different rule might prevail; but no examination of the lot would enable Hurst to determine that its number was not that represented, nor that the lot bearing that number was in the middle of Coon river. An examination of the town plat would be necessary for this purpose, and even then, without the possession of some special skill and knowledge of the

subject one would not be able to locate, upon the ground, a lot described by number on the plat. See Wharton's Criminal Law, §§ 2128–9.

V. It is claimed that the court erred in not instructing the jury upon the following question, to-wit: "That if the jury found from the evidence that a mistake was made in drawing the contract from the defendant to Hurst, by which mistake said lot was described as being in Van's addition instead of South Des Moines, and that the defendant in fact intended to contract the lot pointed out and shown said Hurst, then, in that case, they should find the defendant not guilty." The defendant did not ask any instruction upon the point above named. The evidence was not of such character as to require or authorize the court to give any such instruction upon its own motion. There is no evidence whatever that defendant in fact intended to contract the lot pointed out to Hurst. Upon the contrary the evidence shows clearly that defendant intended to sell Hurst a lot in the bed of Coon river, and to induce him to make the purchase by representing it as situated near the river bank, and in an eligible position for building upon.

VI. An affidavit of one of the jurors was filed as follows: "The jury were out about twenty-four hours in deliberation. A short time before we agreed we sent a note to the judge requesting instructions in regard to certain points in the case. It was argued by some jurors that the court would not pay any attention to the request, and I agreed, on the strength of that, if the court would not I would throw that part of the evidence aside and render a verdict of guilty. We agreed that if it was not considered by the court it was not to be considered by the jurors, and we would throw the point of evidence in dispute aside. The court made no response. The judge was sick that afternoon. One of the jurors came in and made the report that he (the judge) was going to pay no attention to it. We agreed upon a verdict of guilty, after waiting two or three hours. I would not have agreed to a verdict of guilty if I had considered that we had

3. ——: verdict.

a right to consider that evidence, and we threw out that evidence, under the agreement, on the failure of the court to instruct." Affidavits of other jurors were filed of like import. The court makes the following statement, which appears in the record: "The note was not a request in writing for a proposition of law, but really to know my opinion of a question of fact. I did not understand anything about it. I examined the note to see if I could apply any proposition of law, without making it a question of fact. I considered I could not do it." Based upon these affidavits the claim is made that the verdict is not a fair expression of the opinion of all the jurors, and that it should have been set aside for that reason. It is not competent in this way to impeach a verdict.

VII. It is claimed that the court should have sustained the motion in arrest of judgment on the ground that there is a material variance between the allegations in the indictment and the proof. It is urged that the indictment charges that defendant sold a lot to Hurst, and wilfully defrauded by giving a false description, while the evidence tends to show that defendant sold property he did not own. This position is not tenable. The fraud, as alleged and as proved, consisted in representing the lot situated on the river bank as the one sold to Hurst, whereas it was not situated there, but was, as shown by the evidence, to a very great extent in the bed of the river.

VIII. It is claimed that the bare, naked description did not influence Hurst. This may be admitted. If Hurst had obtained the land pointed out to him it would have been immaterial what the description of the lot was on the plat. But Hurst was induced to believe he would, by the trade, obtain title to the lot which was shown him, and which would subserve the purposes for which he desired it. He does not get that, but parts with his property, and obtains a lot, the greater part of which is in the river, and which is valueless for building purposes. He is defrauded out of his property by the false representations of the defendant.

The State v. McConkey.

IX. Lastly, it is insisted that the indictment is insufficient because it does not allege that defendant was not the owner of the lot which he pointed out to Hurst. Appellant cites and relies upon *State v. Webb*, 26 Iowa, 262, and 2 Wharton, § 2158. Neither of these authorities is applicable to the question. The fraud in this case does not consist in representing that defendant was the owner of a lot which he did not own, but in pointing out to Hurst a valuable lot as the one sold to him, and, in fact, conveying to him one of no value, the greater part of which was in the middle of the river. It is true, if defendant owned the lot pointed out as the one conveyed Hurst would, by his purchase, acquire an equitable interest therein, and might enforce a conveyance thereof, if defendant did not put it out of his power to convey by a sale to an innocent purchaser. But it is apparent that defendant might, at any time, by such conveyance deprive the purchaser of such remedy. Now, the quality of an act, whether criminal or otherwise, must depend upon the act itself, and not upon subsequent disconnected acts.

We think, therefore, that if defendant had, in fact, owned the lot which he pointed out to Hurst, which the evidence shows he did not, that he could not, because of that fact, escape criminal responsibility for his fraud.

We have considered, in the order of their presentation, all the objections urged by appellant, and we discover in the record no error prejudicial to the defendant.

                                        AFFIRMED.