STATE OF IOWA, Appellee, v. WILLIAM BULLIS, Appellant.

**RECEIVING STOLEN GOODS:** Evidence. The *character* of the prem-
1   ises where stolen property was recovered, the *character* of said
    stolen property, and the *character* of the inmates of said premises
    are all material inquiries on a charge of receiving stolen property.

**RECEIVING STOLEN GOODS:** Evidence. Evidence as to the *manner*
2   in which goods were stolen is admissible.

**CRIMINAL LAW:** Successive Offenses—Certified Copies. Authenti-
3 cated copies of former judgments of conviction in foreign states
are admissible on the issue whether an accused is a habitual
criminal.

**RECEIVING STOLEN GOODS:** Evidence—Sufficiency. Record re-
4 viewed, and held to sustain a verdict of guilty of receiving stolen
goods.

**CRIMINAL LAW:** Successive Offenses—Instructions. Instructions re-
5 viewed, and held to sufficiently present the law that, on the issue
whether the accused is a habitual criminal, certified copies of
former judgments of convictions are not to be considered unless
the jury first finds the accused guilty of the particular offense
charged in the indictment.

*Appeal from Pottawattamie District Court.*—GEORGE W. CUL-
LISON, Judge.

APRIL 3, 1923.

REHEARING DENIED SEPTEMBER 28, 1923.

THE defendant was indicted for the crime of receiving
stolen property, and was also charged with being a habitual
criminal. He was convicted, and sentenced to the penitentiary
for a term of 25 years. From this judgment he appeals.—
*Affirmed.*

*John J. Hess,* for appellant.

*Ben J. Gibson,* Attorney-general, *Maxwell O'Brien,* Assist-
ant Attorney-general, *C. E. Swanson,* County Attorney, and
*Frank E. Northrop,* Assistant County Attorney, for appellee.

STEVENS, J.—I. The stolen property described in the in-
dictment, with other property that had been stolen, consisting
of men's wearing apparel, was seized by the officers, under a
search warrant therefor, in a story and a half
residence located on the Lena Snyder farm, four
miles northeast of Council Bluffs, which she had
leased, in the March preceding, to the defendant, who had taken
the name of Bennett. The seizure of the men's wearing apparel

1. RECEIVING
STOLEN GOODS:
evidence.

was preceded by a search of the premises for intoxicating liquors, the same afternoon, by Elmer Knotts, a Federal prohibition agent, Elmer Lane, deputy city marshal of Council Bluffs, H. H. Morgan and Robert Murray, special agents of the Northwestern Railway Company, and Ralph Jones, a special agent of the Chicago, Milwaukee & St. Paul Railway Company, under a warrant for that purpose. The above named searching party arrived at the premises about 2:30 in the afternoon of October 14, 1921, where they found one man sleeping in an automobile near by, and three men and one woman in the house, and one just coming out, with a gun in his hand. The names of these parties, so far as shown by the record, were Tierney, Brown, Thomas, King, and Eva King, his wife. The five men were assembled in the living room, disarmed, and placed in the custody of Lane, while the search for intoxicating liquors was being made. Three guns of large caliber were taken from the men in the house. Lane stepped into the kitchen for some purpose, and was almost immediately fired upon by King, from the stairway door, the bullet taking effect in his shoulder. He ran from the house, pursued by King and shot at by one of the other men. King was killed just outside of the house, and Murray in the bedroom. Another of the desperadoes was severely wounded. The fight lasted about three quarters of an hour. The defendant was not at the house when the searching party arrived, nor during the encounter, but was met leading a horse in the highway near a lane leading therefrom, a quarter of a mile from the house. The defendant and Mrs. King were arrested in Council Bluffs the same evening. A further search of the premises was made the following day, and an acetylene outfit taken from a haystack belonging to the defendant. The acetylene outfit had been stolen, a short time before, from the yards of the Northwestern Railway Company in Council Bluffs. In addition to introducing evidence of all of the above matters, the State was permitted to introduce the guns taken from the desperadoes, the acetylene outfit, all of the stolen property, and the clothing worn by Murray at the time he was killed. The admissibility of substantially all of the above testimony was challenged by counsel for the defendant, and the alleged failure of the State to connect him with the larceny or concealment of

the stolen property was made one of the grounds of a motion, at the close of the State's evidence, to direct a verdict in his favor.

It was proper for the State to show the character of the premises from which the stolen property was taken, and of those found in the possession thereof. The house was evidently a rendezvous of desperate criminals. All of the clothing seized by the officers was identified by the merchants from whose stores it had been stolen in the nighttime by someone who had broken and entered the storeroom in which it was kept. The court might well have excluded the offer of the clothing taken from the body of Murray, and of the guns; but the admission thereof, if erroneous, in view of the admissible testimony as to what occurred at the house, was clearly without prejudice. The presence of the stolen property in the house and haystack was in no manner explained. The court properly permitted the State to show everything that occurred at the house, as bearing upon its character as a place where stolen property was received and concealed. *State v. Robinson,* 170 Iowa 267; *State v. Minella,* 177 Iowa 283; *State v. Bigelow,* 101 Iowa 430.

II. The merchants from whom the clothing was stolen were permitted to describe the condition of the building the morning after the larceny. This testimony was also objected to. Evidence that the larceny was accomplished by breaking and entering the storerooms, and of the facts tending to establish the burglary, was clearly admissible. Section 4845, Code; *State v. Lane,* 68 Iowa 384.

2. RECEIVING STOLEN GOODS: evidence.

III. The indictment also charged the defendant with being a habitual criminal. The warden of the Nebraska state penitentiary was permitted to testify that the defendant had been twice convicted of felonies, and confined in the penitentiary in that state for more than three years, under assumed names. One of the original commitments was also introduced, as were certified transcripts of the judgments in each of the prosecutions against the defendant in Nebraska. In addition to the above testimony, a certified transcript of the judgment of his conviction of a felony in the state of South Dakota was introduced.

3. CRIMINAL LAW: successive offenses: certified copies.

Certified transcripts of the judgments of defendant's conviction in other states are admissible in evidence in a prosecution of this kind. Section 5091-b, Supplement to the Code, 1913; *State v. Dowden,* 137 Iowa 573. The objections urged to the admission of the above testimony were properly overruled. The warden had personal knowledge of the defendant's incarceration in the Nebraska state penitentiary. Furthermore, the testimony relating to the defendant's convictions in Nebraska and South Dakota was corroborated by defendant's admission thereof.

IV. No direct evidence of the defendant's connection with the larceny of the stolen property, or of knowledge upon his part that the same was concealed in the house, was introduced by the State. It did, however, show that the defendant leased the premises in 1921, under the name of Bennett; that he was frequently about the house and upon the farm, engaged in farm work; that he arranged with a neighbor to put up the hay on shares; that he was often in company with Mrs. King and with some or all of the men who were present at the time of the search; that he claimed that King was his brother-in-law; that he drove a Ford car and a Ford truck; that he was at and in the house, the day preceding his arrest. The premises were under his dominion and control, as lessee, and the jury was fully warranted, from the above and other circumstances, in finding that the stolen property was concealed in the house with his knowledge of all the facts. The motion to direct a verdict was properly overruled.

4. RECEIVING STOLEN GOODS: evidence: sufficiency.

The other rulings of the court complained of relate to the instructions given and to the refusal to give others requested by the defendant.

V. Complaint is made of the refusal of the court to give requested Instructions 1, 4, 5, 6, 7, and 8. Instruction No. 1 was a mere cautionary instruction, the giving or refusal of which was largely discretionary with the court. Requested Instruction No. 4 related to circumstantial evidence. The evidence of the State was by no means wholly circumstantial, and the instruction in the form in which it was presented was properly refused. The court might properly have given some parts of

this requested instruction; but, in view of the fact that the defendant was shown to be the lessee, and in possession of the premises, and directly associated and connected with the parties found at the house at the time of the search, we think it was not error to refuse to do so.

Requested Instruction No. 5 is without merit. Instruction No. 6 requested the court to advise the jury that the evidence of other crimes of which it was claimed the defendant had been convicted was admissible only as bearing upon

5. CRIMINAL LAW: successive offenses: instructions.

the charge that he was a habitual criminal, and should not be construed as having any weight in determining his guilt or innocence of the crime of receiving stolen property. The evidence was admissible only for the purpose claimed by the defendant, and some instruction directing the jury as to the weight to be given this evidence was proper. The court did not, however, specifically instruct upon this point, but did, with what we deem sufficient clearness, instruct the jury that this evidence should be considered in the event that the defendant was found guilty of the crime of receiving the stolen property. We think that, in view of the latter instruction, the refusal to give the requested instruction is not a ground for reversal.

Requested Instruction No. 3 was similar in its nature, but referred to the evidence of the burglary of the store at Elkhorn and Pisgah. Evidence of these crimes was admissible for the purpose of showing that the property found upon the premises at the time of the search was stolen, and could not properly be considered upon the question of the guilt or innocence of the defendant. The court, however, by the twelfth paragraph of its charge, fully covered this matter.

Requested Instruction No. 8 related to the knowledge of the defendant that the clothing had been stolen. The matters covered by this instruction were necessarily covered by the charge of the court, and the refusal to give the requested instruction was not error.

Complaint is also made of several paragraphs of the court's charge to the jury. We shall not set out or review these instructions. We have examined them with care, and find no error therein. The charge, as a whole, could properly have

included some of the matters urged by counsel for the defendant, and could, no doubt, have been made more complete and certain in several particulars; but the defendant's case appears to have been fairly and fully submitted to the jury. The verdict cannot be disturbed because of error in the instructions.

We have not reviewed in detail all of the evidence, nor referred specifically to each of the alleged errors assigned. We have, however, considered the record carefully, and reach the conclusion that the defendant had a fair trial; and the judgment of the court below is—*Affirmed.*

PRESTON, C. J., EVANS and DE GRAFF, JJ., concur.