STATE OF IOWA, Appellee, v. JOE CORDARO, Appellant.

March 13, 1928.

Rehearing Denied June 26, 1928.

*Vernon W. Lynch* and *Parsons & Mills,* for appellant.

*John Fletcher,* Attorney-general, for appellee.

De Graff, J.—The indictment charged that the defendant did willfully, unlawfully, and feloniously utter and publish a forged instrument, with intent then and there to defraud, in that:

"The said Joe Cordaro, on or about the 17th day of December, A. D. 1924, in the county of Polk in the state of Iowa, having in his possession a certain instrument,—to wit, a check with an indorsement thereon purporting to be that of one Orpha Link,—said indorsement being false and forged, and said defendant knowing the same to be false and forged, said check and indorsement being in words and figures as follows, to wit:

"C. E. Erickson Company    No. B11545
"Incorporated
"Manufacturers of Advertising Specialties
"Des Moines, Iowa, Dec. 17, 1924.
"Pay to The Order of Orpha Link—No. 51......$42.63
"Exactly Forty Two Dollars Sixty Three Cents.

"Pay Roll Account

"To The Iowa National Bank
"33-3   Des Moines, Iowa
"C. E. Erickson Company, Inc.
"By I. M. Bridges."

On the back is indorsed the following:

."Orpha Link
"J. Cordaro."

We turn to the assignment of propositions on which the appellant predicates reversible error.

I. The first assignment reads: The court erred in overruling the defendant's motion for new trial. This assignment  is fatally defective, and raises no question for consideration on appeal. *State v. Vandewater,* 203 Iowa 94; *State v. Lambertti,* 204 Iowa 670; *State v. Gibson,* 204 Iowa 1306; *State v. Gill,* 202 Iowa 242.

II. A second error is predicated on the overruling of the objections to Exhibits H to L, inclusive. Exhibits H to K, inclusive, are checks which had the same origin, were originated for  the same purpose, and were a part of the same general scheme of the defendant in defrauding his employer, the C. E. Erickson Company, Incorporated. Exhibit L was a genuine check, received and cashed by the payee, Myrtle Forbes, an employee of the Erickson Company. The offer of Exhibit L was objected to as immaterial. It may have been, but clearly no prejudice resulted from its introduction.

The objection to the offer of Exhibits H to K, inclusive, is that the purported payees are different parties from the payee in the check Exhibit A, upon which the indictment is based, and that the time is too remote, and "seeking and tending to establish a crime other than the crime set forth in the indictment." It is true, as contended by appellant, that these checks, H to K, inclusive, could only be received in evidence in aid of proof of the intent on the part of the defendant to defraud in passing the check Exhibit A, upon which the indictment is based. It is obvious that this evidence did tend to establish a fixed purpose or design on the part of the accused, of which the particular

offense charged is but one of a series. This evidence tended to prove that the defendant had improvised a methodical scheme, whereby he intended to defraud the Erickson Company by "padding" the pay roll, over which he had complete charge. These checks had been drawn by the defendant, payable to persons not then in the employ of the Erickson Company, to whom no wages were then due. They were never delivered to the payees named in said checks, but were indorsed and cashed by the defendant. The trial court correctly ruled the admissibility of these exhibits, under the principle stated in *State v. Baugh*, 200 Iowa 1225. The purpose of appellant to defraud his employer by issuing a series of pay checks to different persons at different times is clearly established. This evidence bears on the intent of the defendant in the commission of the offense for which he was indicted and prosecuted.

III. A third assignment of error has to do with rulings of the trial court on objections to certain testimony offered by the State. It appears that the scheme of the defendant was discovered by his employer at the time (August 15, 1926) the defendant prepared his last pay roll and submitted to the treasurer of the corporation the pay checks to be signed and returned to the defendant for distribution among the various employees, more than 200 in number. The checks known in the record as "Exhibits O to Y" are the checks that bore the names of persons, as payees, who were not on the pay roll on August 15, 1926. The defendant was confronted with the information that his employer had secured from an investigation of the books and the clock card used in the office, and from other sources, and when so confronted, he made an admission of his irregularities. This was on the 16th day of August, 1926.

E. R. Erickson, an officer of the corporation, testified:

"Mr. Rice, Mr. Bridges, and myself and Mr. Cordaro were present. Had the checks at that meeting. We showed them to Cordaro at that time. After we found that these checks should not have been made, we called him into the office, and asked him what he knew about it. He simply said he was guilty. Mr. Rice (an officer of the corporation) went out and got the records, and Mr. Cordaro helped us check up the names that he recognized on the pay roll. We went back for about a year. We asked him if

that was all, and he assured us that was all that had been written, and said that he thought so. It amounted to pretty close to $3,000. The only thing he said about the checks that were drawn was that he cashed them. Mr. Cordaro had charge of the check books or the record of checks in our office part of the time. He distributed the checks to the employees. Cordaro was back after this conversation the next day, and was going to try to make good. He wanted us to give him a chance. He could not raise the money, so we gave him until the next day, to see what he could do. The next day, he said that $2,000 was all he could raise. He made the remark that we could take it or leave it."

The defendant did, in fact, return to the company $2,000 in cash.

Mr. Rice testified:

"These exhibits O to Y, inclusive, I got out of the last pay roll that Cordaro had drawn up for signature, and voided them by cutting a slot in the signature space. I was the one that called Cordaro to the office and told him that there were irregularities in the pay-roll checks, and that I wanted him to explain; and his answer was that 'I am guilty,' without even any further questioning about it. I have seen Exhibits A [the check in question] and B before. We first discussed them on the check-up. I recognize only one indorsement on these checks (Exhibits A to N), that of Joe Cordaro."

We now turn to the specific complaint made, in that the court overruled an objection to a question asked of Mr. Rice, whether he found out whether or not the people whose names are on the Exhibits O to Y, inclusive, were in the employ of the Erickson Company at the time the last pay roll was prepared. The objection was based on the ground that the question called for the conclusion of the witness, and asked "for facts possibly learned by this witness from hearsay," and not the best evidence. The objection was overruled, and the witness answered that he did "find out." The witness was then asked:

"What was the result of your check with reference to the number of checks that you discovered that were issued to people that were not in your employ at the time the checks were given or issued?"

Objection was made as calling for hearsay or testimony as to the contents of records not produced. The witness answered that there were 479 checks, involving 100 different people.

The challenged questions called for the statement of facts within the knowledge of the witness. The question itself did not indicate from what source his information was obtained. The objection was that his knowledge *possibly* had been obtained from hearsay. The defendant did not, upon cross-examination, inquire as to the source of knowledge of this witness, nor did he make a motion to strike. It is a sufficient answer that no possible prejudice resulted to the defendant from this line of testimony, for the reason that the defendant, when confronted with the evidence in the first instance, admitted his guilt.

IV. Lastly, it is contended that the evidence is insufficient to sustain the verdict. The answers to three questions determine this proposition. First: Was the indorsement ''Orpha Link'' on the instrument forged? There is no doubt about this. The check was never in her possession. The indorsement was not her signature. She never authorized anybody to indorse the check, and did not receive any money in payment for the check. The check itself was genuine, in that it was signed by the maker whose name appears thereon; but it became a forged instrument by virtue of a forged indorsement. It may be conceded that mere proof of forgery is not, of itself, proof of uttering, as these offenses are distinct in the penal Code. *State v. Blodgett,* 143 Iowa 578.

Second: Was the instrument in question known to the appellant to be false and forged? The jury was clearly warranted in answering this question in the affirmative. The appellant had full charge of making out the pay roll and pay checks, and also the distribution of the pay checks to the employees, of whom Orpha Link was one, although, at the time in question, she was not in the actual employment of the company. The instant check was prepared by the appellant. It was delivered by him to the treasurer of the company to sign on behalf of the company, and thereupon it was returned to the appellant. It conclusively appears that the appellant indorsed this check in his own name, below the name of Orpha Link thereon; and there is evidence by a recognized expert on handwriting, William W. Maish, that the two indorsements, Orpha Link and Joe Cordaro,

on the check Exhibit A, were written by the same person. No evidence was offered by the defense, except character witnesses.

It further appears that the genuine signature of the appellant, as indorser, is on divers other checks which were signed by the treasurer of the company under the same circumstances and conditions which give rise to the check in question. Evidence of the repetition of similar acts tends to negative innocence in this particular instance. *State v. Baugh,* supra. Evidence of many other like transactions with checks made to other persons precludes any theory of accident or accommodation in the indorsement and cashing of the check Exhibit A, the basis of the instant indictment.

Third: Was the instrument uttered by the appellant, and with intent to defraud? Clearly a jury question was presented in this particular. An audit of the pay checks between June, 1923, and August 15, 1926, on which latter date appellant's scheme to defraud was discovered, disclosed the fact that 479 pay checks were made payable to 100 persons who had no wages due them, and that said checks were indorsed by the appellant in his own name. The identity of these checks was admitted by stipulation, and it was agreed that the checks correctly show the date, the check number, the payee, and the amount of the various checks. These checks had been cashed by the pay-roll teller of the Iowa National Bank, where the Erickson Company had its pay-roll account. These checks, including Exhibit A, were cashed on the strength of the indorsement of the appellant. The testimony of the cashier of the bank discloses that checks payable to or indorsed by a stranger to the bank are not paid without identification. The check in question bore the stamp of the pay-roll teller's window, as did the other checks of similar character offered in evidence. The appellant was not a stranger to the bank. He had an account at the bank. The jury could conclude that the appellant concocted a well planned scheme to defraud his employer, the Erickson Company; and, as heretofore pointed out, when the scheme was discovered by his employer and an explanation was demanded of the appellant, he admitted his guilt.

A verdict of guilty in a criminal case should not be disturbed for a trivial reason, nor is this court privileged to substitute its conclusion on the facts for the verdict of the jury, unless

354

it appears that there is such a want of support for the verdict as will require a reversal. *State v. Kress,* 204 Iowa 828. The judgment entered by the trial court is—*Affirmed.*

STEVENS, C. J., and EVANS, ALBERT, MORLING, and WAGNER, JJ., concur.