STATE OF IOWA, Appellee, v. RUTH GIBSON, alias Juanita Vajgrt, Appellant.

No. 45214.

JUNE 18, 1940.

Fred D. Everett, Attorney General, Jens Grothe, Assistant Attorney General, and Warren J. Rees, County Attorney, for appellee.

James T. Remley, for appellant.

SAGER, J.—On the morning of November 9, 1939, a check dated Anamosa, November 6, 1939, for the sum of $10.80 was presented to and cashed by the Clarence Savings Bank of Clarence, Iowa. It was drawn on the Citizens Savings Bank of Anamosa and payable to Mrs. H. LaRue. This check is Exhibit 2.

In the afternoon of the same day a check similarly dated, for the same amount, on the same bank, was presented to and cashed by the Farmers Savings Bank of Martelle in Jones county, Iowa. This check was payable to Mrs. Harriet E. LaRue and purported to have been signed by Mrs. C. W. Metcalf. This check, Exhibit 1, is the one upon which this prosecution is based.

On the 14th day of November, 1939, a check dated DeWitt, November 10, 1939, drawn on the First National Bank, for $14.65, was presented to and paid by the Union Savings Bank of Grand Mound, Iowa. This was payable to Mrs. Harriet E. LaRue. It bore the name of Mrs. Sadie McDermott as maker.

These checks were forgeries. Defendant was identified as the Mrs. LaRue who presented and cashed them. The jury was justified in the finding of the facts as we have thus far narrated them though some are in dispute. Appellant does not argue the insufficiency of evidence but contends that the venue of the crime was not established in Jones county. In this connection it is to be noted that the defendant was a resident of Cedar Rapids. She cites two cases, neither of which supports her. In State v. Schwenderman, 192 Iowa 349, 184 N. W. 629, defendant never was in the county in which the forged instrument was presented and cashed, and the most that could be found against him was that someone gave him, in another county, a letter with a check enclosed for mailing to the owner of the check. State v. Brooks, 222 Iowa 651, 269 N. W. 875, involved a charge of rape. The record there was wholly silent with reference to the county in which the alleged crime was committed. We held that venue was not established. Appellee cites, with cases from other jurisdictions, State v. Blanchard, 74 Iowa 628, 38 N. W. 519; State v. Thompson, 19 Iowa 299; and State v. Spayde, 110 Iowa 726, 80 N. W. 1058. These appellant rather scornfully rejects as authority in this language:

''The two old cases cited by appellee were decided in the period previous to the horse and buggy age. It was in 1865 which was the lumber wagon age. What might be an inference

as to a forgery being committed in the county where the instrument was passed in the year 1865 would not be an inference now in the motor vehicle age."

It will be observed that this does not proceed beyond bare statement. The inference defendant would have drawn is plain but it does not logically follow. We are not prepared to say that lapse of time in and of itself is disparagement. At any rate the principle of these decisions has not been overruled, qualified or questioned so far as we have been able to discover. In this case the check was dated in Jones county, was presented and cashed there by this defendant. If appellant's argument were to be accepted, there would be no way of convicting a forger except, perhaps, on the accidental circumstance that someone saw the forgery committed. We have said that if there is a dispute as to venue, the question is for the jury. State v. Schwenderman, supra; State v. Spayde, supra. We find no error here.

■ Appellant's second complaint is akin to the first except that fault is found with this language in instruction No. 9:

"In this connection you may consider the alleged possession of the defendant in Jones County, Iowa, of the check claimed to have been forged, the bank upon which it was drawn, the place of the alleged passing of the check, the alleged residence of the defendant, and all of the facts and circumstances disclosed by the evidence bearing upon this question, and from it all, it is for you to determine whether the alleged offense was committed in Jones County, Iowa."

Defendant contends these "facts and circumstances set out singly and collectively do not constitute sufficient evidence to establish the fact of venue." This instruction is supported by State v. Blanchard, supra.

■ Appellant's next complaint is against instructions Nos. 6, 7, and 8, having to do with expert or opinion evidence. We are not certain as to just what the complaint is but defendant says that the statement of instruction No. 6 that expert evidence

is of the "lowest order when unsupported by convincing reasons based upon facts appearing in the evidence," is an erroneous statement of the law. The only expert to offer an opinion was called by the State so we cannot see how defendant was hurt.

Instructions Nos. 6, 7, and 8 follow very closely No. 3 asked by the defendant. Defendant complains because the court divided the requested instruction "into three different instructions, leaving out pertinent parts and mellowing the benefits of the law favorable to the appellant." We have compared the instructions given and requested and we see no substantial difference. Instruction No. 6, as has been stated, instructed with reference to the low quality of expert testimony when based upon a comparison of handwriting. That instruction went on to say, in line with defendant's requested instruction No. 3, that it is "most useful in cases of conflict between witnesses, as corroborating testimony."

Instruction No. 7 reads:

"If such expert witness during his testimony as a basis for his opinion, points out on the writings in evidence, or photographic enlargements thereof, similarities or dissimilarities, shadings, line breaks, line quality, firmness of stroke or otherwise, or other physical facts, so that they may be observed by you, *then such facts are substantive evidence—that is, independent evidence, or evidence sufficient in itself without further support, and may be so considered by you.*" (Italics inserted.)

Defendant complains that this instruction in effect directs the jury to find the defendant guilty. As stated, there was one expert witness. He pointed out certain claimed similarities in comparing the various signatures and there was no evidence to corroborate it except such inherent credibility as the jury might give it. It seems clear that what the court meant to say was that the characteristic similarities in the handwriting, which the handwriting expert was able to point out and which, of course, would appear from the face of the writing and could be seen, when pointed out, by the jury as readily as by the court, standing alone in and of themselves, became and were

substantive evidence and entitled to be considered by the jury, independent of the expert's opinion, along with other substantive evidence in determining the guilt or innocence of the defendant.

■ Defendant's fourth division complains of the introduction of the other forged checks. Our decisions (cited above) dispose of that contention. That such evidence is admissible in this class of cases is not open to dispute.

■ Division V of appellant's argument is a vigorous assertion of error with respect to the refusal of the court to admit defendant's Exhibit B which is, she says, in all respects like the State's Exhibits 1, 2, and 3. The court refused to admit Exhibit B for lack of foundation. It was right. There was no foundation of any sort laid which would have justified its admission. If a bare similarity in word and figures, without proof that it was in the same handwriting as the forged checks, was sufficient, it would be easy to fabricate a defense by offering any number of checks without preliminary proof except such similarity. The fact that defendant was in custody at the time Exhibit B was presented and cashed has no probative value under the circumstances.

■ The court gave this instruction:

"The defendant is a competent witness in her own behalf, and in determining the weight and credit to be given to her testimony you are to be governed by the same rule as is given you in these instructions for determining the weight and credit to be given by you to the testimony of each and every witness before you.

"You should take into consideration her interest in the result of the suit, the circumstances under which the testimony was given, and all other circumstances connected therewith.

"You are not required to receive blindly the testimony of such accused person as true, but you are to consider whether it is true, as made in good faith, or only for the purpose of avoiding conviction."

Defendant assails the third paragraph in this language:

"There was no reason or call for the court to give the last paragraph of this instruction. It was a pointed attack upon the defendant that was unwarranted from anything that appeared in the trial and it was not proper to call the jury's attention to the testimony of the defendant. This was prejudicial * * *."

We think this complaint is not justified. Some members of this court feel that this instruction might well have been omitted but instructions of the same substance and effect have frequently been approved by this court and the majority is of the view that these cases should not be overruled. It follows that the court did not err here.

■ . We have considered the various contentions made by appellant but have found it unnecessary to analyze them in detail. There remains, however, one unusual feature to be considered. In a reply argument, appellant presents what purports to be a confession signed by the real Harriet E. LaRue, presently an inmate of a reformatory in Shakopee, Minnesota. In this purported confession full responsibility is assumed for the checks involved in this case; an intent to exonerate the defendant is evident. Whether the alleged confession is true or not, we are not called upon to decide. Defendant's attorney says:

"It is the duty of the County Attorney and the Attorney General of the State of Iowa to represent the defendant as well as the State of Iowa. It is the duty of these officers, if they have discovered evidence showing that there has been a miscarriage of justice, to act immediately and do what they can to right the injury done an innocent person."

This may be admitted and that these officers will proceed according to the dictates of justice as they see it, must be conceded. This confession and its effect is not before us.

Finding no error, the trial court must be, and it is, affirmed.—Affirmed.

HAMILTON, C. J., and HALE, OLIVER, BLISS, MILLER, and STIGER, JJ., concur.