STATE OF IOWA, appellee, v. WILLIAM WINFIELD BOLDS, appellant.

No. 48076.

(Reported in 55 N.W.2d 534)

NOVEMBER 11, 1952.

REHEARING DENIED JANUARY 16, 1953.

Verne Lawyer, of Des Moines, for appellant.

Robert L. Larson, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, and Clyde E. Herring, County Attorney, for appellee.

THOMPSON, J.— On November 1, 1951, the Polk County grand jury returned an indictment against the defendant accusing him of the crime of forgery by signing the name of one Alex Ward to a note to the Aetna Finance Company. It was also charged that the defendant had been twice convicted of the crime of burglary in Kane and Rock Island Counties, in Illinois. Upon his plea of not guilty the defendant went to trial and was convicted of the offense charged. In response to interrogatories the jury found he had been convicted in Illinois as alleged. The trial court thereupon, after overruling motions to dismiss the indictment, for judgment notwithstanding verdict, for new trial and to set aside the special findings, sentenced the defendant to a term of not to exceed twenty-five years in the state penitentiary under the provisions of Code section 747.5. From this judgment the defendant prosecutes his appeal.

Defendant's assigned errors are eight in number but they are argued in two divisions only since they fall into two major

categories and depend upon what his counsel think are the two points upon which the trial court was mistaken in its application of the law. It is not contended there was not sufficient evidence to submit to the jury concerning defendant's guilt of the offense of forgery charged.

I. The first proposition argued centers around the claimed error of the court in admitting certain evidence of other transactions. It was later stricken out, but defendant urges the evidence was of that type which is so peculiarly prejudicial that, once heard by the jury, no ruling or admonition of the court can remove it from the minds of the jurors or prevent it from influencing their verdict. A motion for a mistrial was made and denied.

The items of evidence which brought on this contention show an attempt on the part of the State to prove the defendant tried to secure moneys from other finance companies by similar methods used in his dealings with the Aetna Finance Company. On the 14th of April, 1951, he called at the office of the latter concern, represented himself to be one Alex Ward, executed a note and wage assignment and received about $100. On the sixteenth of the same month he returned and received an additional loan in the sum of $107, again signing the name of Alex Ward. Whether the second loan was in addition to the first or the first was paid by the second is not clear and is immaterial. It is the transaction with this company upon which the charge of forgery herein is based.

William H. Dunkin, personal loan manager for the Iowa Guarantee Company, also located in Des Moines, testified, over objection, that on April 19, 1951, the defendant called at the office of his company, representing himself to be Alex Ward, and signed in the latter's name a note and a wage assignment. No money was advanced to him on these papers.

Don E. Williamson, manager of the Jay Barmish Loan Company, testified that on April 19, 1951, the defendant came to the company's office, said he was Alex Ward and asked for a loan. So far as the record shows no loan was made him and no papers signed.

After the testimony of these two witnesses had been admitted, over objection, the court struck it from the record and so

advised the jury; and at the close of all the evidence the jury was admonished that "in consideration of your verdict you will give no weight or consideration to the testimony of the two witnesses William H. Dunkin and Williamson." Defendant contends the error first committed was so prejudicial that striking it from the record and admonishing the jury would not remedy the harm done. ·

We think the matter is largely in the discretion of the trial court. State v. Warren, 242 Iowa 1176, 47 N.W.2d 221; Connelly v. Nolte, 237 Iowa 114, 21 N.W.2d 311; State v. Wheelock, 218 Iowa 178, 254 N.W. 313; State v. Cooper, 169 Iowa 571, 151 N.W. 835. It does not appear there was an abuse of discretion here. Jurors have sworn to try the case in accordance with law and the instructions of the court, and it is only in extreme cases that we can presume they have disregarded their oaths and ignored the strong direction of the court which told them they must not consider stricken testimony. No such situation appears here.

We think also there is a still more cogent reason why no error was committed at this point, at least against the defendant. Error against the State appears. In other words, the stricken testimony was properly admissible and should have remained in the record. Evidence of other offenses is ordinarily not admissible, but when malice or intent is involved or other transactions tend to show a general scheme or course of conduct on the part of the accused, an exception to the rule comes into play. In State v. McWilliams, 201 Iowa 8, 9, 206 N.W. 114, 115, we said:

"The crime of uttering a forged instrument is one of the exceptions to the general rule that the commission of other crimes may not be shown against the accused. It belongs in the class where other like offenses committed by the defendant and connected in point of time or circumstances with the crime charged may be shown, to establish guilty knowledge or intent on his part."

See also State v. Gibson, 228 Iowa 748, 292 N.W. 786; State v. Cordaro, 206 Iowa 347, 349, 350, 218 N.W. 477; 22 C. J. S., Criminal Law, section 691, pages 1135 to 1139, inclusive.

There must ordinarily be some relation in time between the offense charged and the other offenses, or attempted offenses, shown. Such there was here. The forgery at the Aetna Finance Company was on April 16, 1951; the attempts at the Iowa Guarantee Company and the Jay Barmish Loan Company were on April 19.

It seems to have been defendant's thought, as shown by his counsel's objections, that the Iowa Guarantee and Barmish transactions were not admissible because they were not in fact "other offenses." It is true there must be a showing that the signing of the name of the purported maker of the instrument was without his authority. State v. Prins, 113 Iowa 72, 74, 75, 84 N.W. 980. But there was such proof here. Alex Ward, whom defendant represented himself to· be to all three of the loan companies, testified: "I did not give him [defendant] permission to sign my name to any instrument whatsoever."

Nor is there merit to counsel's contention that the signing of the note and wage assignment at the office of the Iowa Guarantee Company was not a forgery because it harmed no one; in other words, that defendant's nefarious purpose having been thwarted by a refusal of the intended victim to go through with the loan, no crime was committed. Our statute on forgery, Code section 718.1, provides "if any person with intent to defraud" etc. It is not necessary that anyone be actually defrauded; the attempt to defraud, the intention to do so is sufficient. State v. Jamison, 74 Iowa 613, 616, 38 N.W. 509; State v. Wooderd, 20 Iowa 541, 547; State v. Pierce, 8 (Clarke) Iowa 231, 235; State v. Carter, 222 Iowa 474, 477, 269 N.W. 445. Here, the defendant signed the papers and their delivery was complete, as was the offense committed.

A somewhat different situation is shown in reference to the testimony of Don E. Williamson, manager of the Barmish Company. Apparently the matter did not get beyond the negotiation stage, and no papers were prepared or signed. So, the offense of forgery was not committed. But we think the evidence was admissible. It was a transaction tending to show a course of conduct, a general scheme on the part of the defendant, and he cannot take refuge in the fact that his attempt was unsuccessful. It would be a strange rule of law which would hold that while other

forgeries might be shown, attempts to commit them could not be. There was no error prejudicial to defendant shown by the matters discussed in this division.

II. Further error is predicated upon the complaint there was no sufficient proof of the two convictions of felonies alleged to have been entered against the defendant in Illinois. It is . the contention that there was insufficient evidence of defendant's identity with the person so convicted. The State sought to prove this part of its case by introducing certified transcripts of the records in Kane and Rock Island Counties, Illinois, and by the testimony of one Lester Acord, a guard at the Illinois State Penitentiary at Stateville for more than thirty-two years.

The authenticated transcript from Kane County shows that on September 10, 1928, one William Bolds, having been convicted by a jury of the offense of burglary, was sentenced to confinement in the Illinois State Penitentiary. The transcript from Rock Island County recites that William Winfield Bolds was convicted in that county of the offense of burglary on February 28, 1946, and was sentenced to confinement in the state penitentiary. Our statute, section 747.6, provides that duly authenticated copies of former judgments and commitments "shall be competent and prima-facie evidence of such former judgment and commitment, and may be used in evidence upon the trial of said cause." We upheld the admissibility of such authenticated copies in State v. Bullis, 196 Iowa 480, 192 N.W. 793; and see State v. Dowden, 137 Iowa 573, 115 N.W. 211, and Code section 622.53.

It is not difficult to. determine the admissibility of these authenticated copies. Defendant's major complaint at this point is that he was not sufficiently identified as the same person as the "William Bolds" and "William Winfield Bolds" who was convicted in the two Illinois cases. In passing, it should be pointed out that even if it should be held there was insufficient evidence of identification to permit submission to the jury of the question of the two previous convictions, a full reversal would not be required. The conviction of forgery would stand and the cause would be remanded for sentencing under the general provisions of section 718.1, supra. State v. Barlow, 242 Iowa 714, 720–726, 46 N.W.2d 725, and cases cited therein.

But there was here ample evidence to require submission to the jury on the issue of the two alleged previous convictions. We have held in several cases that the certified or authenticated copies of the records of former convictions of a person of the same name are not of themselves enough to raise a jury question. State v. Smith, 129 Iowa 709, 106 N.W. 187, 4 L. R. A., N. S., 539, 6 Ann. Cas. 1023; State v. Logli, 204 Iowa 116, 214 N.W. 490; State v. Lambertti, 204 Iowa 670, 215 N.W. 752; State v. Parsons, 206 Iowa 390, 220 N.W. 328; State ex rel. Hammond v. Franklin, 215 Iowa 384, 245 N.W. 283. The evidence in the instant case, however, goes much beyond the mere introduction of the authenticated copies. Lester Acord, for thirty-two years past, a guard at the Illinois State Penitentiary, testified that he knew the defendant; that he was the same person who was an inmate of that institution—the same to which the William Bolds and William Winfield Bolds was sentenced as shown by the authenticated copies—on two different occasions. He first met the defendant at the penitentiary in 1928 or 1929, and he came back there in 1946. These dates correspond with the dates of sentence shown in the authentications and furnish a sufficient basis for a jury determination on the question of identity.

The case of State v. McCarty, 210 Iowa 173, 230 N.W. 379, comes closest to supporting defendant's contention at this point. There, to support allegations of two previous convictions, one in Webster County and one in Cerro Gordo County, the State, in addition to producing the records of convictions, introduced the testimony of the then sheriff of Webster County, who testified he had seen the defendant at Fort Madison (presumably at the state penitentiary there) at different times, and that defendant told him he was sent from Fort Dodge (Webster County) the first time. So far as the opinion shows there was nothing to connect the defendant with the Cerro Gordo County conviction except the similarity in names. We think the holding of the McCarty case is somewhat unrealistic, at least as to the Webster County conviction, and are not inclined to broaden its scope. It may be distinguished from the case at bar by the fact that the sheriff's testimony did not attempt to fix the time when he saw the defendant in the penitentiary, thus throwing some further doubt

upon the relation of his incarceration there to the specified convictions.

Other authorities support the State's position here. In State v. Bullis, 196 Iowa 480, 484, 192 N.W. 793, 794, the identifying evidence was that of the warden of the Nebraska State Penitentiary who testified the defendant had been twice convicted of felonies and confined in that institution. This was held to be proper evidence to connect the defendant with the records of conviction which were in the Nebraska courts. We said: "The objections urged to the admission of the above testimony were properly overruled. The warden had personal knowledge of the defendant's incarceration in the Nebraska state penitentiary."

It is true that in the Bullis case there was also evidence of admissions, but we think it sufficiently appears this court would have held the warden's testimony alone ample to require submission of the question of identification to the jury.

Similar evidence has been upheld as sufficient in other jurisdictions. In Lovan v. Commonwealth, 261 Ky. 198, 87 S.W.2d 381, the state produced an employee in the identification department of the penitentiary to which the records of the previous convictions showed the defendant therein had been committed. This witness testified that the defendant in the case on trial had served two sentences in the penitentiary. The opinion says at page 200 of 261 Ky., page 382 of 87 S.W.2d: "This testimony was objected to, but it was competent to identify appellant as the same person who had theretofore been convicted of felony in McCracken County."

To the same effect is State v. Spencer, 130 Wash. 595, 597, 228 P. 689. The prior convictions alleged were in the state of Texas. The Washington Supreme Court said:

"The identity of the appellant was shown by the testimony of a guard of the Texas penitentiary in which the appellant was confined under the judgments of conviction and by photographs taken of him when he was received at the penitentiary. Some question is made as to the sufficiency of these proofs, *but we think them amply sufficient to sustain the verdict of the jury*." (Italics supplied.)

In the Kentucky and Washington cases cited the testimony

of the employees of the penitentiaries and the photographs did no more than did the testimony of the guard, Acord, here. In each case there was proof of previous convictions of one with an identical, or very similar, name to that of the defendant on trial. There was also proof that the defendant had been an inmate of the penal institution to which the accused named in the certified or authenticated transcripts was sentenced. In the case under consideration here the time of incarceration fits the date of sentence in each instance. Certainly there was a jury question as to identity. Any other holding would be highly unrealistic. We have gone to considerable lengths in our decided cases in holding the proof on this point insufficient, but we have never gone as far as the defendant asks us to do here.

Nor do we see any injustice in such a holding. True it is that the State must make its case, without help from the defendant. But surely a fair inference of identity and previous conviction may be drawn by the jury from the circumstances shown in evidence. If they are not true, if the defendant is not the same person convicted in Illinois, if the guard was mistaken in identifying him as having been twice committed to the penitentiary, or if he was in fact committed there because of offenses other than those of which a person of the same name was convicted in Kane and Rock Island Counties, he could readily have said so, and the proof should not have been difficult for him to produce. Yet, although he took the witness stand, no word of his testimony denied the previous convictions. In fact, he did not refer to them in any way. Of course, this failure of defendant had not occurred when his motion for directed verdict was made at the close of the State's evidence, but we think it does illustrate the injustice of a too technical ruling against the State on the question of identity. It did appear when the motion was renewed at the close of all the evidence, and furnishes much support, if support were needed, for the ruling adverse to defendant at that time.

II Wigmore on Evidence, Third Ed., section 285, page 162, says: "The nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its *tenor is unfavorable to the party's cause.*"

288

We follow this rule in State v. Cotton, 240 Iowa 609, 625, 626, 33 N.W.2d 880. We there quoted from Blatch v. Archer, 1 Cowper 63, 65, and from Hall v. Vanderpool, 156 Pa. 152, 155, 26 A. 1069, 1071, and cited other cases from Iowa and other jurisdictions. We said: "Where the absent testimony is that of the actor in the transactions, strong evidence is necessary to relieve the party from the prejudicial effect of the presumption." State v. Cotton, supra, page 626.

We find no error prejudicial to the defendant.—Affirmed.

All JUSTICES concur.