STATE OF IOWA, Appellee, v. EASTER CANAILE, Appellant.

1170

November 13, 1928.

*C. H. Elgin,* for appellant.

*John Fletcher,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

De Graff, J.—Divers errors are relied upon by the appellant for a reversal, but, for the sake of brevity, these errors may be classified under three propositions: (1) Prejudicial statements elicited by the prosecuting attorney on the direct examination of witnesses Sheriff Gaughenbaugh and Constable Seath, who made the arrest of the defendant; (2) insufficiency of the evidence to sustain the verdict; and (3) error in certain instructions given by the trial court to the jury.

I. We first turn to the challenged testimony of the State's witness Sheriff Gaughenbaugh. The record is in part as follows:

"Q. Are you acquainted with the defendant Canalle? A. Yes, sir. Q. How long have you known him? A. The last four years, I expect,—possibly longer. Q. Sheriff, what business is Canalle engaged in here [Centerville]? A. Liquor business. (Defendant's attorney: That is improper, and a mere conclusion, an opinion of the witness, and prejudicial. The court: Objection sustained.) The witness then answered that the defendant was interested in a pool hall. Q. Who has been interested with him in that business? (Objected to as immaterial and secondary, not the best evidence. A. Slim Campbell. The court: Objection sustained. Defendant's attorney: Can't you wait? The court: You will wait, Mr. Sheriff. Objections sustained.) Q. Now in that place of business, what is there? (Same objections. Defendant's attorney: I thought we were going to try a transporting of liquor case, instead of somebody running a pool hall. Question restated. Same objections, and all of them,—immaterial and collateral to any issue here. The court: Objections sustained.) Q. What is the equipment or stock? (Same objections. The court: Objections sustained.) Q. Who works there in that place of business with Canalle? (Same objections. The court: Objections sustained.) Q. Does Chester Rhodes work in that same place? (Same objections. The court: Sustained.)"

A complaint of similar nature is based on the direct examination of William Seath, the constable of the township where the alleged crime was committed. He testified that he was acquainted with the defendant Canalle, and had known him for at least ten years. He was then asked if he knew the occupation of the defendant at the time charged, to wit, May 7, 1927. Objection was made as incompetent, immaterial, and calling for the conclusion of the witness. The court ruled the objection by stating: "He may answer, if he knows." Having stated that he did know, he was then asked: "What is it?" Similar objections were made, and overruled. Whereupon counsel for the defendant added, by way of objection: "Misconduct on the part of the county attorney, prejudicial, and done for the purpose of prejudice." The court then said: "If the witness knows of his own knowledge, he may answer." A. "Well, running the pool hall,

and bootlegging." Defendant's counsel then moved to strike, and the court, in ruling, said:

"That last part may go out. That last remark may go out. It is improper, and the jury will not consider it for any purpose."

At this point, the defendant requested the court to discharge the jury and continue the case, on account of the prejudicial misconduct on the part of the county attorney and his witnesses, "especially this witness and the witness Gaughenbaugh." "The court: I will say this to the jury. Defendant's counsel: That won't do it, your honor. The court: I am saying this to the jury: As I told you before, the remark of Sheriff Gaughenbaugh that was stricken out, you will not consider for any purpose. This last remark of this witness I have stricken out, and you will not consider it for any purpose. When I say that, that means you will eliminate it from your minds. That remark was improper. I don't want it to occur again. Motion overruled. Exceptions."

It is the specific contention of the appellant in this court that the evidence heretofore set out was "prearranged evidence, concocted by the county attorney and his star officer witnesses," and that this evidence "tended to and had doubtless been instilled into the minds of the jury, which was not corrected by the rulings and the admonitions of the trial court." There is nothing in the record which discloses any prearrangement between the county attorney and the "star witnesses." In fact, the evidence is to the contrary. Upon the cross-examination of Constable Seath, he was asked if he and the sheriff and the county attorney had not "framed" to put in improper evidence in this case. He answered emphatically in the negative, and that he was not trying to do anything by unfair or foul means; that he did not testify by reason of any interest in the case; that he did not know that the testimony in question was improper; and that he had never talked with the county attorney about this case, and did not know what questions would be asked of him on the witness stand.

At the time that Sheriff Gaughenbaugh took the witness stand, he was asked, without objection, whether he was acquainted with the defendant Canalle, and how long he had

known him, and what Canalle's business was in Centerville. It may not be said that either counsel or court could have anticipated that the sheriff, in answer to the last question, would reply, "Liquor business." Furthermore, the answer, when made, was immediately stricken. The same is true as to the improper answer of the witness Seath. The trial court was quite specific in its direction to the jury that the challenged evidence as to both witnesses in this particular should not be considered "for any purpose." The record is silent whether or not the court, in the instructions given to the jury, referred further to this matter; but even in the absence of further instruction, the jury understood the meaning and intent of the oral instruction that the testimony "was not to be considered by them in reaching a verdict." *State v. Foster,* 136 Iowa 527.

In the case of *State v. Lyons,* 202 Iowa 1195, the trial court in the first instance overruled the motion to strike certain testimony, but later announced that the motion would be sustained, and directed the jury to give no consideration whatever to such testimony. In that case, as here, the appellant contended that, notwithstanding the fact that the testimony was unequivocally and specifically withdrawn from the consideration of the jury, the error in its admission was not cured. The proposition was held untenable. True, there are cases wherein we have been constrained to say that evidence improperly admitted was of such toxic character that the error was not cured by striking same and giving proper admonitions to the jury. *State v. Poston,* 199 Iowa 1073; *State v. Paden,* 199 Iowa 383; *Quillen v. Lessenger,* 190 Iowa 939; *Hood v. Chicago & N. W. R. Co.,* 95 Iowa 331. We do not consider the instant case to be within the class of the foregoing cases and others cited by appellant in his brief.

Appellant also seriously questions one other item of evidence which has to do with searching a car and the finding of liquor by Sheriff Gaughenbaugh in the forenoon of the day that the defendant Canalle and his companion Rhodes were arrested. It appears from the testimony of the sheriff that the first time he saw the defendant on the day of his arrest was when Canalle and Rhodes left Canalle's pool hall and entered Rhodes's car, which was parked in the street, directly

north and in front of the pool hall. The sheriff and Seath got in the sheriff's car, and followed the Rhodes car. As the sheriff's car turned off Primary No. 3, two cars "pulled out" of what is called the Raven road or lane. One went west, and one went east. The defendant Canalle at that time was driving the Rhodes car, coming west. The sheriff's car followed the car going east, and known in this record as the Riles car. In the examination of the sheriff, the question was asked: "And did you stop and search that car?" Objections were made, and the trial court inquired: "How do you claim that is material? How long do you claim it was, before the alleged act?" The county attorney replied: "It was the same day, not very long before. The sheriff can tell you. I can't." The objection was overruled, and the sheriff answered that a search was made. To the question as to what was found, the sheriff replied, over overruled objections: "Nine pints of alcohol in a sack—a paper sack."

It is apparent that the trial court was confused about which car the testimony related to. The Rhodes car, in which defendant was riding, was a Dodge coupé, with license No. 4070. The other car was a Chevrolet roadster, and this fact was made known by a question put to the witness by the trial judge, who then and there said: "I don't see how that is material," and further:

"It may go out, what he found in that car. The jury will not consider it. Whenever the jury is told not to consider evidence, they will not consider it for any purpose. It is stricken out."

Constable Seath also testified that he saw the defendant east of town on the Raven road, and that "there were two cars out in the Raven road," and, that the defendant "was leaving Riles'  car and going back to the Rhodes car, No. 4070." Although objections were entered to this line of testimony, it was clearly competent to trace the movements of the defendant at this time. The constable further testified:

"No one was with him [Canalle]. Riles was driving his car. Q. And did you follow the Riles car at that time? (Objected to as incompetent, immaterial, irrelevant, and collateral.

Overruled. Exceptions.) A. Yes, sir. Found nine pints of alcohol in it."

This last remark was a volunteer statement, and not responsive to the question asked the witness. It is apparent that the jury was warranted in finding, inferentially at least, some connection between the defendant and the Riles car. In the light of this record, we are not inclined to hold that reversible error may be predicated on the rulings of the court relative to the Riles car incident.

II. Is the evidence sufficient to sustain the verdict? The defendant and one Rhodes, on the afternoon of May 7, 1927, left the defendant's pool hall, got into Rhodes's automobile, and  drove east from Centerville. The defendant testified as a witness. Rhodes was not called as a witness, although, at the time of the trial, he was in the county jail, under sentence on his plea of guilty to the crime charged in this indictment. The defendant testified, as a witness in his own behalf, that, at the time in question, he was "going home," for the purpose of getting "some billiard balls for the pool hall." He denied keeping any liquor in the car; denied that he knew any liquor was in the car when the car started, or when he left the car, upon his arrest on the public highway by the sheriff; denied that he broke any bottles of liquor in the Rhodes car; denied that he owned any liquor or was transporting any liquor that was in any of the bottles, or was in any way interested whatsoever in the bottles of liquor; and, in brief, said that he "didn't know anything about any liquor or anything that was in these bottles, if these were bottles, or if there was any bottles in the car." The evidence discloses, and the jury was warranted in finding, that the sheriff of Appanoose County and the constable in the local township followed the Rhodes car from a business street of Centerville, and that, after they had proceeded for some distance behind the Rhodes car, they observed that the occupants of the Rhodes car (Rhodes and Canalle) had discovered that they were being followed. Shortly thereafter, the sheriff and the constable saw the defendant Canalle bend forward "his head and shoulders, moving back and forth, like that [indicating], while Rhodes was sitting perfectly straight, driving." Immediately thereafter, a

"liquid" was seen flowing in a stream from the car, making "a wet strip along the paving. You could see it clear along his car, running down."

The record further discloses that the Rhodes car attempted to escape the sheriff's car, did not respect the command to stop, and was finally crowded to the curbing. The constable jumped on the running board of the Rhodes car, and the car stopped. The car was then and there searched, and there were found on the floor of the car four four-ounce broken bottles. The floor of the car was wet. Canalle and Rhodes were then placed under arrest, and taken to Centerville. The sheriff called a number of witnesses, for the purpose of smelling the odor in the car and the broken bottles. The sheriff testified he knew the smell of alcohol, had handled considerable liquor since he was sheriff, and, "judging from the smell of the contents there in the car and the liquid that was spilt around over the car, that it smelt like alcohol, and that he would say it was alcohol." Other witnesses, including the constable, testified to the same effect.

The evidence presented a jury question. The defendant did avail himself of the statutory defense that he did not know that there was intoxicating liquor in the vehicle, and that he had no interest or ownership in the liquor. In passing, it may be stated that, attached to defendant's motion for new trial, but not specifically referred to therein, is the affidavit of Chester Rhodes, in which he recited that, on the day in question, he and Canalle started to go down to Canalle's home for some billiard balls; that Canalle did not know there was any liquor in the car; that, while Canalle was looking back (at the sheriff's car), he (Rhodes) reached in the pockets and got the bottles of alcohol and broke them; that Canalle did not break any of them, and did not know that they were in there; that Canalle had no knowledge that the bottles were there, or of their contents. The jury did not have the benefit of these recitals, as Rhodes was not a witness upon the trial. The affidavit was not filed on the theory of newly discovered evidence, and cannot now be considered by this court as corroboration of the testimony of the defendant Canalle.

The jury was warranted in finding that the defendant and Rhodes were engaged in a joint enterprise, and that the bottles of liquor in the car were purposely and deliberately destroyed by

the defendant Canalle. The destruction of the liquor was accomplished immediately prior to the arrest of the defendant and Rhodes. The floor board of the car was freshly wet, and the officers making the arrest had witnessed the movements of the defendant in the Rhodes car, and also the liquid stream that flowed from the car immediately after said movements.

III. It is urged that the court was not warranted, under the evidence, in submitting to the jury an instruction which embodied the law of aiding and abetting. With this we cannot  agree. True, the guilt of a person who aids or abets the commission of a crime must be determined upon facts which show his part in it, and does not depend upon the degree of the other's guilt. *State v. Mickle,* 199 Iowa 704; *State v. Marish,* 198 Iowa 602; *State v. Johnson,* 198 Iowa 588; *State v. Berger,* 121 Iowa 581; *State v. Jones,* 115 Iowa 113.

It is not necessary, to constitute unlawful transportation of intoxicating liquor, that the transportation should be completed or consummated. Proof of the possession of liquor and of present transportation is sufficient. The word "transportation" in the liquor law does not have a technical meaning, but is employed in its ordinary sense: that is, to convey from one place to another,— any real carrying about. *Cunard S. S. Co. v. Mellon,* 262 U. S. 100 (67 L. Ed. 894); *Asher v. State,* 194 Ind. 553 (142 N. E. 407). No burden rested on the State to prove that the defendant had a pecuniary interest in the liquor. See *People v. Ninehouse,* 227 Mich. 480 (198 N. W. 973). Under our statute, the destruction or any attempt to destroy any liquor by any person while in the presence of peace officers, or while the property is being searched by a peace officer, is prima-facie evidence that such liquor is intoxicating liquor, and intended for unlawful purposes. The court gave correct instructions involving statutory provisions governing intoxicating liquor, and applicable to the case at bar. In *State v. Duskin,* 202 Iowa 425, the facts are not analogous to the facts of the instant case.

Lastly, it is contended that the court erred in giving to the jury an instruction relating to the statute of limitation, wherein it is said that, in order to find the defendant guilty, it must be

shown beyond a reasonable doubt that the defendant did, in Appanoose County, Iowa, "at or about the time alleged in the indictment of this case, or any time within three years immediately preceding the filing thereof, transport intoxicating liquors contrary to law." This instruction simply embodied the statutory provision. As a matter of fact, the only evidence bearing on the time of the commission of the offense was May 7, 1927. No other evidence bearing on the time was before the jury for consideration. No possible prejudice could result from the giving of this instruction. See *State v. Speck*, 202 Iowa 732.

We have given this record, including the transcript of the evidence, a careful reading, and we find no legal basis for a reversal. The judgment entered is—*Affirmed.*

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.