STATE OF IOWA, appellee, v. BILLY JOE MISKELL, appellant.

No. 48725.

(Reported in 73 N.W.2d 36)

November 15, 1955.

Rehearing Denied March 9, 1956.

Smedal & Maurer and Milton D. Seiser, all of Ames, for appellant.

D. W. Countryman, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, and D. L. Nelson, County Attorney of Story County, for appellee.

Bliss, J.—The information charged the accused with the crime of reckless driving *"with liquor involved"* for that on November 23, 1953, he "did unlawfully, willfully operate his motor vehicle in a reckless manner *with liquor involved \* \* \** contrary to section 321.283 of the 1950 Code of Iowa." (Italics ours.) On motion of defendant the italicized words were stricken by the court.

The crime with which defendant is charged is found in section 321.283 of the Code of Iowa, 1950, to wit: "Reckless driving. Any person who drives any vehicle in such manner as to indicate either a willful or a wanton disregard for the safety of persons or property is guilty of reckless driving."

On the date stated, at about noon, as a prospective buyer, defendant was permitted by an automobile dealer in McCallsburg, Iowa, to take a used car that had been reconditioned, for a test drive of an hour or so. Later that afternoon Mrs. Roy Van Zee, a farmer's wife living a short distance east of McCallsburg, was proceeding eastward on an east-west road in her car with

her two children for a four o'clock dental appointment in the town of Zearing, Iowa. The highway was a gravel two-lane road. She was traveling at a speed which she estimated as about fifty miles an hour. She had been driving a car for about nineteen years. When she was about 250 or 300 feet from a north-south intersecting road she observed a car about to pass her although she had heard no horn. This car passed her and cut into her lane about five or ten feet in front of her car, "and the wheels of the car were off the ground." She was startled. She estimated the passing car was exceeding the speed of her car by fifteen miles an hour, and when it was about 100 feet in front of her it started to roll over. Mrs. Van Zee testified that the car rolled over three times—the first being before it reached the intersection. When the car reached the south side of the road the driver evidently cramped his wheels, and it turned sideways and started to turn over. It hit a highway sign. There was loose, moist gravel on the north side of the road but the witness did not recall the condition of the south side of the road. She saw no holes or depression in the road nor in the intersection, and said the road was not a "washboardy" gravel road, but just an ordinary gravel road, and safe to travel over at a speed of fifty miles an hour. She testified that as the car started to roll over "its doors started flying open and several beer cans fell out and a gun." She put on her brakes but not hard enough to slide the wheels. The passing car came to rest on the south side of the road, on the east side of the intersection. She stopped her car and walked up to the other car, which was about 100 or 150 feet east of the intersection. She saw the cans of beer along the road and about the car. The driver of the car was still in his car but she did not speak to him. Mrs. Van Zee was a witness for the State.

Mert Coover, the car dealer, was a witness for the State. He testified that: the defendant came into his place of business about 12:15 p.m. on the 23d of November, 1953, and asked him if he could take out a 1951 Super 88 Oldsmobile to show it to someone who might help him purchase it. The witness told him to have it back by one o'clock that afternoon. "It was then in good mechanical condition with the exception of the generator. He never brought it back and when it was towed in it was completely demolished."

A Mr. Goodmanson, of Roland, Iowa, a witness for the State, a trucker for the Marshall Canning Company, about four o'clock in the afternoon of November 23d was driving an empty truck west on the gravel road between McCallsburg and Zearing. When he was about eighty rods east of the intersection we have referred to, he "counted a car being up in the air about three times." He did not see it before it started to turn over, but he saw the dust that it made. He stopped to give assistance and found Miskell in the car unconscious. The car was on the south shoulder of the road. There was some loose gravel and also a bump in the road at that point. He said it was never a good road until they later fixed it. It was his judgment that the skid marks started east of the intersection. The car went end over end three times and landed on all four wheels. It was badly demolished. He saw four or five cans of beer and picked them up and threw them in the ditch. He did not see any skid marks across the intersection. The car turned over three times east of the intersection on the south side of the road. He stated that the car first started to turn over east of the intersection. There was loose gravel on the sides of the road. He located the place where the car first started to turn over by a dent in the road. There were washboard bumps in the intersection. "The road was maintained and it was not a hazardous road."

Dale Allen, an automobile mechanic, who had worked for Mr. Coover, the auto dealer, since 1946, as a witness for the State testified he was familiar with the mechanical condition of the Oldsmobile which the defendant drove on November 23, 1953. He had repaired it and road tested it, the second time being just the morning before defendant took it out, and the car was in good condition except for the generator. The steering apparatus and brakes were in good condition at the time Miskell drove it.

Dr. Charles L. Hall, an osteopathic physician at Zearing, testifying for the State, said that he was called to the scene of the Miskell accident and gave him a preliminary physical examination, and he saw him later in the hospital. He testified to the location of the accident, but gave no other testimony.

William Severin, a highway patrolman, whose district included Story County, was a witness for the State. He investi-

gated the accident about 4:10 p.m., after the defendant had been taken to the hospital. He testified that he first observed the tire marks of Miskell's car 300 feet west of the intersection in some gravel that had been piled on the north side of the road. He followed these tire marks and the marks of the car where it rolled over—leaving green paint marks on the gravel—to where the car was standing approximately 265 feet east of the intersection. A road signpost was broken off on the south side of the road. The witness saw the defendant at the hospital that evening and asked him for his driver's license, and how fast he was going, and "he (Miskell) said he was going about 35 to 40 miles per hour."

At the close of the State's evidence, defendant made the following motions to strike: 1. All words concerning liquor in the Information; 2. to eliminate all such words from any charge to the jury, and to instruct the jury to totally disregard the same; 3. to strike from the testimony of Mrs. Van Zee what she stated about seeing beer cans fly out of the defendant's car; 4. all testimony of Goodmanson about seeing and picking up beer cans on the highway or in the ditch; 5. to strike from the testimony of Severin, the highway patrolman, all statements of his conversation with defendant at the hospital, as being violative of Code sections 321.266 et seq. and 321.271; and 6. to direct a verdict for defendant because of insufficient evidence to sustain the charge in the Information.

The court sustained motions 1, 2 and 4, and overruled motion 3, since the testimony of Mrs. Van Zee that she saw beer cans flying from the car was material as bearing upon the manner in which the car was being driven. The court also overruled motion 5 for the stated reason that in the opinion of the court Code section 321.271 does not apply to criminal matters, and that State v. Williams, 238 Iowa 838, 848, 28 N.W.2d 514, involved only the question whether the prosecuting attorney had been guilty of misconduct. We do not determine that question, for in any event the officer's taking of defendant's driving license, and his question respecting defendant's speed and the latter's answer that it was 35 to 40 miles per hour were in nowise prejudicial to defendant. He later testified in his own behalf that the car was traveling fifty miles an hour. It is our conclusion that the court rightly

ruled on all the motions. There was no error in overruling motion 6 to direct a verdict for defendant. There was ample competent evidence to sustain the charge in the Information.

A witness for defendant testified that after the car driven by defendant had been reconditioned, and on the Saturday before the accident, he took the car out to see how it would drive and when it exceeded forty miles an hour it seemed to weave or crawl from side to side of the road. Another witness testified that he was familiar with the highway running east out of McCallsburg to the Zearing corner, and had driven over it the day before the accident, and it was "washboardy" across the intersection and, while he did not see any chuckhole at the intersection, he felt it as he passed over it in his truck. He said: "The road is well maintained. I can't say what the condition of the road was at the time of the accident. The road was safe to travel."

Testifying for himself, defendant told of getting the car at the Coover garage for a test drive, and after driving it about twelve miles, he drove it about two more miles east on the gravel road to the corner, where the accident occurred. He said: there was gravel on both sides of the road and as he proceeded on the south side at a speed of about fifty miles an hour, he honked his horn and went around and ahead of the Van Zee car about 300 feet from the intersection; he did not know the speed of that car but he gained on it; because of the condition of the north shoulder, the car had a tendency to pull to the left; he denied that he cut in within five or ten feet of the Van Zee car, and said he was about five car lengths or 100 to 150 feet ahead of that car before he pulled over to the right, about 300 feet from the intersection; he did not recall the wheels of the car being in the air or the car skidding, but as he pulled back toward the center of the road and was about at the middle of the intersection he felt a terrific jolt, and lost control of the car. He testified that he had been driving a car since he was about twenty years old and had driven about 150,000 miles and considered himself a good driver. He was cross-examined at some length, without objection as to other cars he had wrecked, and said there had been not over two. When inquiry was made to a specific instance, an objection that it was improper cross-examination and incompetent was overruled. He

denied the incident. He also denied over the same objection that he had been in at least ten accidents. Asked if he had not bought some beer at a service-station tavern just preceding the accident, the court sustained an objection. When asked if he had ever been convicted of a felony, he answered that he did not know what a felony was, and that he would rather not answer as to whether he had been convicted of a felony, as it had nothing to do with the case. He refused to answer whether he had been convicted of uttering a false check for $706.86 on July 6, 1947, in Marshall County, Iowa. There was no objection to the interrogation just above.

The defendant then rested, and the State offered no rebuttal. The foregoing résumé of the evidence fully and fairly covers it.

The defendant then moved to strike all of the cross-examination of the defendant with reference to whether he had been convicted of a felony, as incompetent and highly improper. He renewed his motions with respect to the testimony of Mrs. Van Zee, and of Mr. Severin, and his motion to direct a verdict for him. The first motion was sustained, the court saying: "The defendant's motion to strike all of his testimony on cross-examination with reference to the inquiry as to whether or not he has ever been convicted of a felony is sustained, for the reason that as the record now stands the testimony would be prejudicial to the defendant, and it is upon that ground that it is stricken."

The court then stated:

"Members of the Jury, in your absence the defendant has made motions to strike some of the testimony which has been offered here, and the Court has ruled on these motions, and with reference to the same the Jury is now told that the testimony of the witness, Goodmanson, to the effect that he saw beer cans in the road and that he threw them in the ditch, and the testimony of the witness, Van Zee, that she saw beer cans in the ditch are stricken.

"The testimony of the defendant on cross-examination with reference to all questions pertaining to whether or not he had ever been convicted of a felony is stricken. Does that cover the extent of your motion?

"Mr. Pell: I think it covers it in accordance with your previous ruling, Your Honor. Thank you.

"Defendant's exceptions to closing argument of Mr. Lounsberry for the State.

"Mr. Pell: Exception is taken to the remarks of counsel when he stated substantially in regard to the defendant, Miskell: who would sit up there on the stand and deny he had been convicted of a felony, as improper conduct on the part of the prosecutor, highly prejudicial, and exception is taken to the remarks and request is made of the Court to admonish the Jury to pay no attention to such remarks.

"The Court: With respect to the remarks of the attorney for the State, the Jury is told to disregard anything that the attorney for the State has said with reference to a felony so far as this defendant is concerned, so you are told to disregard any reference to it whatsoever."

The attorneys who presented this appeal did not participate in the trial. They rely for reversal upon three assigned errors: 1. Overruling defendant's motion at the close of the State's evidence to direct a verdict, and its renewal at the close of all the evidence; 2. the admission of Patrolman Severin's testimony as to defendant's answers to questions asked him by the patrolman while investigating the accident; and 3. the denial of a fair trial to defendant by prejudicial misconduct. We find no merit ·in any assigned error.

I.  As we have hereinbefore stated there was substantial evidence sustaining the charge in the Information filed against the accused.

■■■■  In a criminal action the cause should be submitted to the jury, and the court should not direct a verdict of acquittal if there is any substantial evidence reasonably tending to support the charge. State v. Anderson, 239 Iowa 1118, 1125, 33 N.W.2d 1; State v.  Crandall, 227 Iowa 311, 318, 288 N.W. 85; State v. Rutledge, 243 Iowa 179, 183, 184, 47 N.W.2d 251; State v. Hammer, 246 Iowa 392, 395, 66 N.W.2d 490, 492. In passing upon the appellant's contention the State's evidence, with all reasonable inferences therefrom, must be taken as true and viewed in the light most favorable to the State, and it is necessary to consider

only the evidence which tends to support the verdict. See above-noted citations and State v. Schmidt, 239 Iowa 440, 445, 30 N.W.2d 473; State v. Williams, 245 Iowa 401, 403, 62 N.W.2d 241; State v. Graff, 228 Iowa 159, 174, 175, 290 N.W. 97. Deciding fact issues is the province of the jury and its verdict on conflicting and supporting evidence is conclusive on appeal. State v. Franklin, 242 Iowa 726, 734, 735, 46 N.W.2d 710; State v. Kneedy, 232 Iowa 21, 27, 3 N.W.2d 611; State v. Harrington, 220 Iowa 1116, 1123, 264 N.W.24. Defendant's operation of the automobile was of a character as indicated either a willful or wanton disregard for the safety of persons or property and justified the jury's verdict that he was guilty of reckless driving. As said in State v. Hill, 239 Iowa 675, 679, 32 N.W.2d 398, 400: "Reckless driving is not an intentional wrong in the sense that resulting harm is intended. The statute is violated by conscious and intentional driving which the driver knows, or should know, creates an unreasonable risk of harm to others."

II. With regard to the second assigned error based upon Patrolman Severin's interview with defendant we have hereinbefore expressed our conclusion that there was no prejudicial error, and we will not elaborate further. So far as the record shows the interview between the defendant and the patrolman consisted of the latter asking defendant for his license to drive, and how fast he was driving before his car upset. His reply of 35 to 40 miles an hour was less damaging to him than his admission as a witness that his speed was about fifty miles per hour.

III. The third and last assigned error was: "Defendant was denied a fair trial by reason of a series of acts by the State throughout the trial. The purpose of said acts was to prejudice and discredit defendant in the eyes of the jury, irrespective of the merits of the case at bar, and which acts, taken as a whole, or singly, constitute prejudicial misconduct on the part of the prosecuting attorney."

Defendant sets out the specific conduct of which he complains as follows:

1. The reading of the Information to the jury containing the expression "with liquor involved", coupled with the fact that there was no evidence that defendant had been drinking.

On motion of defendant, at the close of the State's evidence, the court struck the words about liquor from the Information. The words were omitted from the Information as it appeared in the instruction to the jury, and the jury was told in the first instruction to entirely disregard such words.

2. The questioning and testimony of Mrs. Van Zee that she saw beer cans flying out the doors of the car driven by defendant after it had passed her. This testimony was material and pertinent as bearing on the reckless operation of the car. The court struck her testimony that she saw the cans of beer on the ground. The testimony might properly have been let stand. She was a witness to the entire incident, including the cans in flight and at rest on the ground. After striking this testimony at the close of plaintiff's evidence, and also the testimony of Mr. Goodmanson that he saw cans of beer in the road, the court so informed the jury after they entered the box, and in its written instructions the jury was told not to discuss or consider any testimony that had been stricken.

3. The questioning and testimony of Mr. Goodmanson regarding beer cans. What we have said in the preceding paragraph applies to this complaint.

4. The questioning of Dr. Charles L. Hall whether he knew the smell of alcohol, and if he saw any at the scene of the accident.

The doctor testified without objection that he had contacted people who had been using alcoholic liquor and that he knew the odor. Objection to the question whether he smelled the breath of defendant was sustained. And his answer that he saw no liquor at the scene of the accident and detected no odor of beer or liquor about the car, but that he did see beer bottles and beer cans, was stricken.

5. The questioning of Mr. Severin, the patrolman, if he was familiar with smell of intoxicating liquor and his affirmative answer were not objected to.

6. The cross-examination of defendant respecting prior automobile accidents.

He had testified in direct examination that he was 32 years old and had driven motor vehicles since he was 19 or 20 years old, and had driven about 150,000 miles. This testimony was

probably given to show his competency as a motorist. His first statement in cross-examination was that "I have had considerable driving experience and consider myself a good driver." We find no prejudicial error in this examination.

7. The inquiry whether defendant bought some beer at Mr. Hagen's service station in McCallsburg.

The court sustained an objection to the question, and the inquiry was pursued no further. He had taken the car about noon for a trial run, from Mr. Coover's place of business in McCallsburg with the request that he return it by one p.m. He testified that he bought gasoline at Hagen's about 3:30 p.m. It is fair to assume that Mr. Coover was not placing beer in his cars on these testing drives, and that defendant had knowledge of how the beer was placed in the car, but he did not see fit to shed any light on it or his sobriety on this occasion.

8. The cross-examination of defendant as to any conviction of a felony.

The examination was proper as bearing on the credibility of defendant's testimony. This cross-examination was stricken on defendant's motion at the close of plaintiff's evidence, as noted, supra.

9. Argument to the jury that defendant did not deny he had been convicted of a felony. We have already noted the objection to this argument and the court's ruling sustaining it and directing the jury "to disregard any reference to it whatsoever."

IV. As we said in State v. Caringello, 227 Iowa 305, 310, 288 N.W.80, 83: "Juries * * * are uniformly made up of law-abiding citizens, with honest purposes, and of at least average intelligence. They are competent to understand, and are desirous of obeying the instructions of the court as to what they shall and shall not consider in determining their verdict. The trial court promptly and fully admonished the jury, both at the time of the withdrawal, and later by written instruction, and this appellate court is bound to assume that the jury fully understood and obeyed its admonitions." See also Taylor v. City of Sibley, 238 Iowa 1010, 1014, 1015, 29 N.W.2d 251; State v. Weaver, 182 Iowa 921, 930, 166 N.W. 379, 382; State v. Dobry, 217 Iowa 858, 865, 250 N.W. 702.

690

V. Questions of improper conduct by a prosecuting attorney are peculiarly within the discretion of the trial court, and this court should not interfere unless the conduct complained of has been so prejudicial as to deprive the complainant of a fair trial. State v. Warren, 242 Iowa 1176, 1187–1189, 47 N.W.2d 221; State v. Bolds, 244 Iowa 278, 282, 55 N.W.2d 534; State v. Jensen, 245 Iowa 1363, 1368, 66 N.W.2d 480; Connelly v. Nolte, 237 Iowa 114, 125, 126, 21 N.W.2d 311; Withey v. Fowler Co., 164 Iowa 377, 391, 145 N.W. 923.

VI. "The general rule is that, if evidence erroneously admitted * * * is distinctly withdrawn by the court, the error is cured, except in extreme cases where it is manifest that the prejudicial effect of the evidence on the jury remained despite its exclusion and influenced their verdict. 4 C. J. 898, section 2972." In re Estate of Iwers, 225 Iowa 389, 403, 404, 280 N.W. 579, 587.

See also McKee v. Iowa Ry. & L. Co., 204 Iowa 44, 49, 214 N.W. 564, 567, stating: "A fortiori the admission of incompetent evidence is cured by specific instruction to the jury not to consider same, in addition to striking such evidence from the record." State v. Warren, supra, 242 Iowa 1176, 1183.

In State v. Leek, 152 Iowa 12, 17, 18, 130 N.W. 1062, 1065, we said: "It must be borne in mind that the county attorney is not the court, and that impropriety of conduct on his part does not constitute in itself reversible error. * * * And the court was not asked to grant a new trial on account of any prejudice or improper influence due to this particular part of the argument of the county attorney."

There was no motion for new trial in the case at bar.

It is our conclusion that the defendant had a fair trial, and the judgment should be, and is, affirmed.—Affirmed.

All JUSTICES concur except PETERSON, J., who takes no part.