STATE OF IOWA, appellee, v. HARVEY JOHN LONG, appellant.

No. 49466.

(Reported in 93 N.W.2d 744)

DECEMBER 16, 1958.

Don Hise, of Des Moines, for appellant.

Norman A. Erbe, Attorney General, Hugh V. Faulkner, Assistant Attorney General, Ray Hanrahan, Polk County Attorney, and Leo S. Ballard, Assistant Polk County Attorney, for appellee.

LINNAN, J.—Appellant was found guilty of the crime of operating a motor vehicle while intoxicated by a jury in Polk

County, Iowa. The only question presented by this appeal is whether or not the Assistant County Attorney of Polk County was guilty of such prejudicial misconduct as to require a new trial.

The defendant was arrested on March 5, 1957, at about 11:36 p.m., after he had collided with a telephone pole and a parking meter. He voluntarily consented to have a blood test taken and the blood test was taken at the Lutheran Hospital in Des Moines which showed a blood count of 268 mgm. per 100 cc.

Upon the trial of the case, his family physician, Dr. Harry Kaack, Jr., of Clinton, Iowa, was called out of order as a witness on his behalf. This doctor testified that the defendant had been a diabetic since February 1948 and that he normally carried a blood count in excess of 200 mgm. and that the blood test which was taken following his arrest was worthless. Upon direct examination, he testified as follows:

"When the blood sugar is high and there is acetone in the blood too, this acetone preparation has exactly the same reaction in a test that alcohol would be. Therefore, if you would want to test the alcohol in a person that has diabetes, it would be worthless. The test for alcohol would be worthless because acetone mixes with the alcohol that would be in the blood and you would be unable to tell.

"Q. And you have visited with Mr. Long today, have you not?

"A. Yes, sir.

"Q. What is your opinion on whether or not he is intoxicated or sober at the present time?

"A. He is sober but he has acetone on his breath.

"Q. He has acetone on his breath?

"A. Yes, sir. If you were to take a blood test now, he would be drunk.

"Q. Doctor, if a blood alcohol test were run on Mr. Long at the present time, right now, in your opinion what would that blood alcohol test show? [Question objected to and not answered.]"

After this questioning and some further questions in regard to the effect of acetone in the blood stream, the following proceedings took place:

"The Court: I think it is quite material to the defense. I am not anticipating what the doctor might say but if, for instance, he would take a standard alcohol blood test right now and test, for instance, the same as he did according to what your evidence on anticipating will show, it is quite material to the defense of the defendant and I think—I don't know what he is going to answer—I think I have to let him answer.

"Q. Now, if Mr. Long were given a standard blood alcohol test at the present moment, in your opinion how many milligrams of alcohol or acetone would show up in 100 cc of Mr. Long's blood at the present time?

"Mr. Ballard: I make the same objection. There has not been a proper foundation laid for the Doctor to voice an opinion upon that subject.

"A. Your Honor—

"The Court: No, we are not concerned with how much acetone is in his blood but I do think if the question were rephrased to acetone, I have to let him answer that in his opinion as an expert he would test under our alcohol test right now because of his sugar content in his blood.

"Q. I will rephrase the question and leave out the acetone, do you have an opinion on that?

"Mr. Ballard: Same objection, Your Honor, blood or sugar.

"A. I feel it would be as high right now as it was when he was arrested. Here is the point. May I make a point?

"Q. Certainly.

"A. Any alcohol test on a diabetic is worthless because the acetone interferes with the determination of the amount of alcohol, if there is any."

After the cross-examination of this witness was conducted, the Assistant County Attorney, Mr. Ballard, made the following statement in the presence of the jury:

"Mr. Ballard: I have no objection, Your Honor. In connection with this witness, Your Honor, I would like to request the Court and the defendant for the permission for a recess, that we might take the defendant to the hospital with his own physician and with the Coroner of Polk County to take at this time a blood test of him, since there has been some issue raised by the doctor and, in all fairness to the doctor, I think he should

be allowed at this time to have such a blood test and analysis and if it is 268, like the doctor testified, and I have every reason to believe him, I think the State would be in position to discuss this case against him. You would agree to that, wouldn't you, sir?

"The Court: Gentlemen, I think this is something that should be done without the hearing of the jury, and the jury will remember the admonition heretofore given, and stand aside, outside the courtroom."

Thereupon the jury was excused and the following proceedings took place not in the presence of the jury:

"Mr. Ballard: Your Honor, the State urges the same motion that came before the jury left, and we do respectfully show the Court that the State is interested in doing justice to this defendant, and there has been a question raised in the mind of the prosecutor to an extent that I feel in fairness to the defendant, and while his doctor is here, that a new blood test, one that is run in the presence of his own physician, would be a fair one. I can guarantee the Court on my oath as an attorney, and also to Mr. Hise if the test does at this time show—and I will state in the record the defendant is stone cold sober—if it does show he has this 268 blood count, I think we will have a duty and I will dismiss this case. I think we are being unfair to proceed without that on the basis of this record.

"Mr. Hise: Just for the sake of the record, comes now the defendant and objects to the statement of offer of counsel in the presence of the jury for the reason that it is highly prejudicial; that under the terms as specified by the prosecutor, such a request might not be able to be complied with by this defendant and that, as a result, he is put in a very unfair and unfavorable position in the eyes of the jury and if the—as I understand the prosecutor's request and statement, he insists that unless the blood alcohol test which might be run at the present time shows 268, he would not be willing to dismiss this case; there is no assurance—

"Mr. Ballard: If that is the only point, even if it shows 150, I would be willing to dismiss the case, Your Honor.

"The Court: We are in a funny position because of the admissibility of the evidence as a result of this test taken now

and, unless you gentlemen can agree on it, it would not be admissible.

"Mr. Ballard: The doctor has testified about the matters of the blood test with a sober diabetic person. I thought for that reason—

"The Court: I understand. I think your offer is in good faith but, unless you can agree and unless there is something to be had for the benefit of all parties concerned here, I am inclined to not go along with it. I don't think the result of the test now would prove or disprove anything that happened on March 5th, and I do believe, Mr. Ballard, your offer is in good faith—what is your sentiment?

"Mr. Hise: I am certain it is in good faith, but I do think it prejudices the defendant no end, Your Honor.

"The Court: Let's get the record straight. Then the defendant denies or refuses at this time to take the blood test in the presence of his own doctor at the Lutheran Hospital now.

"Mr. Hise: Well, may I have a chance to confer with my client—may we use your office?

"The Court: Yes, use it.

"Mr. Ballard: I would dismiss it even if it is 150."

(Recess)

"Mr. Hise: I will add to my objection that the defendant respectfully requests that the Court promptly admonish the jury to pay no attention whatsoever to the remarks of the Assistant County Attorney in the presence of the jury and, in addition, this defendant points out to the Court that any test run at the present time would have no evidential value and no probative value as to any matter in issue which happened on or about March 5th or 6th, 1957.

"The Court: Mr. Hise, do I take it to be that you at this time decline to have the test as offered by the State?

"Mr. Hise: That is correct.

"The Court: Your objection will be sustained with the exception that I do not believe that the Court should admonish the jury not to pay heed to the remarks of counsel for the State because I do feel it was made in good faith. We will, in the presence of the jury, not let them know of this ruling but just proceed.

"Mr. Hise: May I have the understanding, then, with Court and counsel that this matter will not be discussed in argument or again before the jury?

"Mr. Ballard: As to this refusal now to submit to another test, you will have it, Mr. Hise."

Later the State called as witnesses two pathologists from the Iowa Lutheran Hospital in Des Moines, who testified that the presence of acetone in the blood stream would not increase the blood count over 50 mgm. and that a person who had a blood count of 268 mgm. would be intoxicated regardless of the presence of acetone in the blood stream. Upon this record the case was submitted to a jury who found the defendant guilty.

The sole question before this court is whether the statement of the Assistant County Attorney in the presence of the jury constituted prejudicial misconduct as to require a new trial. It is the opinion of this court that it did not.

I. From the foregoing record it must be noted that the question of another blood test was more or less initiated or suggested by the questions propounded to Doctor Kaack by defendant's counsel in his direct examination. Further, both the trial court and defendant's counsel made it a matter of record that the statement objected to was made in good faith. It further appears that after the court's ruling the matter was not further pursued and was not commented upon in the argument to the jury. It would appear, therefore, that the verdict of the jury was based upon the positive testimony of the State's expert witnesses rather than upon the statement of counsel to which objection was made.

II. The three cases cited by appellant in his brief, State v. Tolson, 248 Iowa 733, 82 N.W.2d 105, State v. Leuty, 247 Iowa 251, 73 N.W.2d 64, and State v. Comes, 245 Iowa 485, 62 N.W.2d 753, do not support the contention that the defendant did not receive a fair trial in this case. In each of those cases there were repeated, persistent and flagrant acts of misconduct by the prosecuting attorney, sometimes continued after adverse rulings by the trial court. No such misconduct appears in this case.

III. We recently said in State v. Olson, 249 Iowa 536, 554, 86 N.W.2d 214, 225:

"In any event we are not persuaded defendant is entitled to a reversal on the ground asserted. The general rule is that the distinct, prompt withdrawal of evidence erroneously admitted cures any error in admitting it except in extreme instances where it is manifest the prejudicial effect of the evidence on the jury remained and influenced the verdict despite its exclusion. State v. Miskell, 247 Iowa 678, 690, 73 N.W.2d 36, 43, and citations. See also State v. Bolds, 244 Iowa 278, 281, 282, 55 N.W.2d 534, 535; State v. Canalle, 206 Iowa 1169, 1173, 221 N.W. 847. We think this is not such an extreme instance as calls for interference by us.

"We have frequently held misconduct of the prosecuting attorney does not require a new trial unless it appears to have been so prejudicial as to deprive defendant of a fair trial. State v. Harless, 249 Iowa 530, 536, 86 N.W.2d 210, 213, and citations; State v. Miskell, supra; State v. Warren, 242 Iowa 1176, 1189, 47 N.W.2d 221, 228, and citations; State v. Caringello, 227 Iowa 305, 309, 288 N.W. 80."

The case of State v. Case, 247 Iowa 1019, 75 N.W.2d 233, seems to be quite analogous to the case at bar. There the prosecuting attorney in the absence of judge and jury asked defendant, in his counsel's presence, if he was willing to submit a specimen of his handwriting for comparison with a writing in his confession he denied was his. Defendant did not consent. When trial was resumed, a witness was called who testified over objection that the defendant had been requested to furnish such a specimen and that he would not consent to do so. Comment was also made about this refusal in argument to the jury. In affirming a conviction in that case, this court said at pages 1027 to 1030:

"Certainly what transpired during the adjournment could not have been prejudicial to defendant. The jury knew nothing of it except what Hildreth testified. Nor do we think there was misconduct of counsel sufficient to require a reversal in connection with that testimony. There would seem to be no impropriety in asking defendant in the presence of his counsel if he was willing to furnish the prosecution a specimen of his writing for purposes of comparing it with a writing he denied

was his. And when defendant did not consent the State was entitled to show that fact. It was not entitled to show what Huffman would testify. However, Hildreth was not asked nor did he say what Huffman would testify other than that he would compare defendant's writing with the word 'She' on the confession. What such a comparison would reveal obviously could not be known until the specimen of defendant's writing was furnished.

"An annotation in 171 A. L. R. 1144, 1192, states: 'By the pronounced weight of authority, where the defendant * * * in his testimony, has denied that a writing was made by him, it is proper cross-examination * * * to require him to write, in the presence of the jury, the disputed words or figures, or some of them, and thereby create a specimen of his handwriting to be used in evidence for comparison with the disputed writing.'

"It would seem less damaging to an accused to show in evidence his refusal, when requested in the jury's absence, to furnish a sample of his writing than to require him to write, or refuse to write, the disputed word in the jury's presence.

"We have held evidence admissible that one accused of operating a motor vehicle while intoxicated declined to submit to a blood test. State v. Benson, 230 Iowa 1168, 300 N.W. 275. The decision is cited with apparent approval in State v. Small, 233 Iowa 1280, 1282, 1283, 11 N.W.2d 377, 378, and State v. Williams, supra, 245 Iowa 494, 503, 62 N.W.2d 742, 747. Precedents similar to State v. Benson include State v. Gatton, 60 Ohio App. 192, 20 N.E.2d 265 (cited in our Benson case); State v. Nutt, 78 Ohio App. 336, 65 N.E.2d 675; Gardner v. Commonwealth (Hudgins, C. J.), 195 Va. 945, 81 S.E.2d 614, 617, 618; City of Barron v. Covey, 271 Wis. 10, 72 N.W.2d 387. See also annotation 175 A. L. R. 234, 240.

"State v. Severson, N. D., 75 N.W.2d 316, 317, reaches a result contrary to State v. Benson, supra, without citing any precedent to support it, largely on the strength of statutes providing, ' "No defendant shall be required to submit to any chemical test without his consent" ' and that a defendant's failure to testify shall not be referred to or considered.

"We think there is a clear analogy between evidence of a

defendant's refusal to submit to a blood test and evidence of his refusal to furnish a specimen of his writing for comparison with a disputed one. Certainly it would be much easier to write a single word than to submit to a blood test. State v. Benson, supra, and like decisions thus seem by analogy to support our conclusion here."

Later in the opinion, we further said:

"Misconduct of counsel does not require granting a new trial unless it appears to have been so prejudicial as to deprive defendant of a fair trial. State v. Miskell, 247 Iowa 678, 690, 73 N.W.2d 36, 43, and citations, including State v. Jensen, 245 Iowa 1363, 1368, 66 N.W.2d 480, 482; State v. Haffa, 246 Iowa 1275, 1283–87, 71 N.W.2d 35, 40–42, and citations; Connelly v. Nolte, supra, 237 Iowa 114, 130, 21 N.W.2d 311, 318, and citations; State v. Caringello, 227 Iowa 305, 288 N.W. 80, and citations.

"24 C. J. S., Criminal Law, section 1902a, pages 896 to 898, states: 'A cause will not necessarily be reversed because of alleged misconduct of counsel. On the contrary, appellate courts are strongly inclined against setting aside convictions because of misconduct of counsel. * * * Misconduct of counsel is generally regarded as harmless and not cause for reversal where it has not resulted in depriving accused of a fair trial, or in a miscarriage of justice * * *.'

"A fair trial does not necessarily mean an absolutely perfect one. State v. Haffa, supra, at page 1286 of 246 Iowa, page 42 of 71 N.W.2d."

See also State v. Haffa, 246 Iowa 1275, 71 N.W.2d 35, and State v. Jensen, 245 Iowa 1363, 66 N.W.2d 480.

IV. Complaint is also made because the trial court did not admonish the jury to disregard the statement of the prosecuting attorney. We do not think any prejudice resulted therefrom. State v. Ean, 90 Iowa 534, 58 N.W. 898; State v. Kouhns, 103 Iowa 720, 73 N.W. 353. Admonishing the jury might only have emphasized the matter. While the record does not show that defendant's motion for a new trial was overruled, we must assume that it was, and from that fact the trial court must have found that the matter objected to was not prejudicial.

336

Upon the whole record, we feel that the defendant had a fair trial and that the case should be affirmed.—Affirmed.

All JUSTICES concur.