STATE OF IOWA, appellee, v. LAVERN WILBUR HESS, appellant.

No. 51136.

(Reported in 129 N.W.2d 81)

June 9, 1964.

Morris & Morris, of Des Moines, for appellant.

Evan Hultman, Attorney General, John H. Allen, Assistant Attorney General, Harry Perkins, Polk County Attorney, and James D. McKeon, Assistant County Attorney, for appellee.

MOORE, J.—February 27, 1963, defendant, Lavern Wilbur Hess, and Donald Raymond Prine were indicted by the Polk County Grand Jury for the crime of robbery with aggravation. A plea of not guilty was entered by Hess February 28. On trial to a jury commencing March 25, Hess was found guilty. Prine died in a fire at the county jail prior to Hess' trial. Defendant's motion for a new trial claimed he had been convicted only because of "guilty by association". Two of his witnesses were felons. This motion was overruled April 5. April 8, 1963, he was sentenced to imprisonment in the Iowa State Penitentiary at Fort Madison for twenty-five years and taxed with the costs. From this judgment and sentence he appeals.

The one proposition relied on for reversal is that the prosecutor was guilty of misconduct in cross-examination of defendant's wife and himself. Defendant claims he therefore did not receive a fair trial.

Shortly after 9 p.m. Sunday, February 3, 1963, two men entered the pharmacy owned by Brick Strait on east Thirty-third Street in Des Moines and at gunpoint forced Strait and

his pharmacist, John A. Evans, to lie on the floor while one man took the money and a small check from the cash register. Later they went to the back of the store where a bottle of pills was removed from the narcotics container. After forcing Strait and Evans to the store basement and certain threats on their lives, the two robbers left. Strait then ran outside, observed a vehicle being driven away and with help from other witnesses gave the police some description of the escape vehicle. Soon thereafter Hess and Prine were arrested in a yellow truck owned by Hess which he had used in his roofing work. Hess was searched and in his coat pocket was found a large amount of silver and paper money. The small check which had been given Strait by a customer a few minutes before the robbery was found with the money. The bottle of pills and a gun were found in the truck.

Evans saw the two men just before they put cloth masks over their faces and entered the store.

After their arrest Prine and Hess were identified by Evans both as to their facial appearance and clothing. Strait identified them as wearing the same kind and color of clothing as the robbers. They identified Prine as the man with the gun and who took the bottle of pills. They identified Hess as the one who took the cash and check.

When first arrested both men denied any knowledge of or part in the robbery. After identification Hess on several occasions admitted to city detectives his part in the robbery.

On trial Hess again admitted his part in the robbery but for the first time claimed his acts were involuntary. He testified everything he did was because Prine compelled him to do so under threats. He said Prine threatened to kill him.

Hess, Prine and two of defendant's witnesses were drinking in a small downtown hotel the afternoon and early evening the day of the robbery. One witness testified Prine threatened to shoot him and made a like threat to Hess. The other testified Prine put his gun on Hess and said: "You come on, you dirty S O B and go with me 'cause you have got that truck and I need it or I will blow your guts out right here."

The experienced trial court submitted all issues, including defendant's contention, to the jury.

In addition to the record filed herein, we have carefully studied the transcript and find defendant's trial strategy apparently was to admit all, make few objections and attempt to convince the jury his claim he acted only because of threats and fear was in good faith. He failed in the trial court to properly object or raise the issues which he and his new attorney now argue. No motion for a mistrial because of any misconduct of the prosecutor was made. No motion for a directed verdict was made at the close of the evidence. As we have stated, his motion for a new trial was limited to one ground. Defendant is asking for the first time the question of misconduct by the assistant county attorney be considered.

This appeal could be summarily disposed of on the proposition questions raised here were not properly raised below. We have repeatedly said under such circumstances no appealable question is presented to this court. State v. Mart, 237 Iowa 181, 186, 20 N.W.2d 63, 66; State v. Meeks, 245 Iowa 1231, 1240, 65 N.W.2d 76, 81; State v. Kramer, 252 Iowa 916, 918, 109 N.W.2d 18, 19, and citations in each. See also State v. Meyers, 256 Iowa 801, 129 N.W.2d 88.

In State v. Kramer, supra, at page 919, 252 Iowa, page 20, 109 N.W.2d, we said: "Generally we think that when a defendant is represented by competent counsel, and for reasons of strategy or otherwise questions or objections are not presented to the trial court, there is grave danger they may be considered on appeal to have been waived."

However, because of Code section 793.18 we have examined the entire record to determine whether defendant received a fair trial and as a matter of grace only will consider the proposition relied upon notwithstanding it was not raised in the trial court. State v. Mart, supra.

Defendant's wife, Erma, testified they had been married five years and were buying a home in which her children of prior marriages also lived. She described defendant's truck and lettering thereon. She knew nothing about the robbery or events prior thereto. On cross-examination she was asked her maiden

name and the last names of her three children each of which was different. She was then asked in a series of questions if she had ever been known as Mary Ann Davis, Mary Ann Coin, Mrs. Robert Penning, Mrs. Raymond Hess or Mrs. Wright. Her answer to each question was in the negative.

After most of these questions were answered defendant objected on the ground of improper cross-examination which the court overruled. However, later the trial court on his own motion struck the five questions and answers from the record and admonished the jury to disregard them. Defendant sought no other remedy.

Assuming, arguendo, the assistant county attorney acted improperly in asking these questions we are unable to find any prejudice to defendant.

■ On cross-examination Hess stated he was taken from the county jail to the third floor of the police station. He testified:

"Q. All right, what did you do there? A. I got a lie detector test.

"Q. Concerning your participation in this crime? A. Concerning my participation in a murder on Keosauqua and the use of narcotics.

"Q. And your participation in this crime? A. There was no questions asked in any participation in this crime."

On redirect he testified:

"Q. You took a lie detector test on a murder investigation? A. Yes.

"Q. And so far as you know, that's proceeded no further? A. That's right.

"Q. The investigation over there on this particular case where you are charged with robbery with aggravation relative to the Strait Drug Store, was further investigation over there on this case or on some other cases that they were investigating? A. I think their main reason was for, to see if I had anything to do with the murder on Keosauqua Way. * * *

"Q. Did they tell you they were investigating some other case? A. Yes.

"Q. You haven't been charged with any, charged with any other crime aside from this one? A. No.

"Q. Have you been informed that you have been charged with any other crime? A. I was informed that I would be charged with another—

"Q. Well, didn't have anything to do with this crime or some other set of facts?

"Mr. West: Strike that and put it another way.

"Q. When you were investigated over there, including the lie detector test, at that time, was any mention made of this particular crime that you are charged with here? A. None."

On recross-examination Hess testified:

"Q. Mr. Hess, were you asked a series of questions concerning the obtaining of narcotics at the Strait Drug in that lie detector test? A. * * * I was not. I was asked a question if I had knowingly used any narcotics in recent years, or similar to that.

"Q. Now, do you know where Prine got this gun? A. I do not.

"Q. Do you know where it is supposed to have come from? A. I was told by Detective Couch it came from an armed robbery on Southwest Ninth.

"Q. Now, will you tell this jury where Mr. Prine held this gun on Mr. Strait's person? A. I didn't see where the gun was on Mr. Strait; all mine be what they said, that they put it to his head.

"Q. Now, did you hear Mr. Strait testify that he put it behind Mr. Strait's left ear? A. I heard him testify that he put it behind his ear.

"Q. Do you know where the filling station operator up on Keo was shot? A. I know the location of it, yes. * * *

"Q. I mean on his body where was the filling station attendant shot? A. I don't know.

"Q. Mr. Hess, you don't know? A. No.

"Q. What the results of that test was, do you? A. Well, I know what the man took the test told me.

"Q. But you don't know what the actual results are, do you? A. I can't read the graph."

Thus the record discloses reference to an investigation of a murder was first made by defendant in an unresponsive

**800**

answer and then completely explored by his attorney on re-direct examination followed by questions of perhaps an over-zealous prosecutor.

Assuming again, arguendo, the prosecutor was guilty of some misconduct we are unable to find any prejudice to defendant. His answers he knew nothing about the murder on Keo were undenied.

■ In State v. Cooper, 169 Iowa 571, 587, 151 N.W. 835, 841, we stated the rule, often cited thereafter, as: "The rule is that mere misconduct of counsel is not enough alone to require the granting of a new trial, unless it appears to have been so prejudicial as to deprive the complaining party of a fair hearing of his case by the jury on the evidence."

See also State v. Haffa, 246 Iowa 1275, 1283, 71 N.W.2d 35, 40; State v. Case, 247 Iowa 1019, 1029, 75 N.W.2d 233, 240; State v. Long, 250 Iowa 326, 335, 93 N.W.2d 744, 747.

24A C. J. S., Criminal Law, section 1902(1)a states: "A cause will not necessarily be reversed because of alleged misconduct of counsel. On the contrary, appellate courts are strongly inclined against setting aside convictions because of misconduct of counsel. * * * Misconduct of counsel is generally regarded as harmless and not cause for reversal where it has not resulted in depriving accused of a fair trial, or in a miscarriage of justice * * *."

■ A fair trial does not necessarily mean an absolutely perfect one. State v. Haffa, supra, at page 1286 of 246 Iowa, page 42 of 71 N.W.2d.

Upon the whole record, we feel defendant had a fair trial.—Affirmed.

GARFIELD, C. J., and LARSON, PETERSON, THORNTON, SNELL and STUART, JJ., concur.

THOMPSON, J., dissents.

HAYS, J., not sitting.